**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
Taylor L. Emerson, Esq. (SBN 225303)
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Telephone:   (805) 270-7100
Facsimile:    (805) 270-7589
mbradley@bradleygrombacher.com
kgrombacher@ bradleygrombacher.com
temerson@bradleygrombacher.com

**ROTHSCHILD & ASSOCIATES, APC**
Kristi D. Rothschild, Esq. (SBN 222727)
Julian Alwill, Esq. (SBN 259416)
27 W. Anapamu Street, Suite 289
Santa Barbara, California  93101
Telephone:   (805) 845-1190
Facsimile:    (805) 456-0132
krothschild@kdrlawgroup.com
jalwill@kdrlawgroup.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA RIDGELL, on behalf of herself and others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC. a Colorado corporation; AIRBUS S.A.S., a foreign corporation doing business in the State of California; AIRBUS GROUP HQ INC., a corporation doing business in the State of California Defendants. | Case No.: 2:18-CV-04916 PA (AFMx)<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE** |

Plaintiff Andrea Ridgell ("Plaintiff") respectfully requests that this Court take judicial notice of the following documents, pursuant to Federal Rule of Evidence, Rule 201201(b)(2), which requires the Court to take judicial notice of facts "not subject to reasonable dispute" when they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned":

1.   Federal Judicial Center's 2005 publication, "Managing Class Action Litigation: A Pocket Guide for Judges." A true and correct copy is attached as Exhibit "A."

2.   The official annotations regarding the 2003 Amendments to Federal Rule of Procedure 23(c)(l)(A). A true and correct copy is attached as Exhibit "B."

Exhibits "A" and "B" may be judicially noticed because they are either (a) reliable government documents from the Internet, *Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 879 (N.D. Cal. 2013); (b) documents and filings in other judicial proceedings, *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); and/or (c) otherwise "not subject to reasonable dispute because" they are either (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b).

DATED:   September 6, 2018               **BRADLEY/GROMBACHER, LLP**


                                         By**:   /s/   Kiley Lynn Grombacher**
                                              Marcus J. Bradley, Esq.
                                              Kiley Lynn Grombacher, Esq.
                                              Taylor L. Emerson, Esq.
                                              Attorneys for Plaintiff

**Plaintiff's Request for Judicial Notice**

**EXHIBIT A**

# Managing Class Action Litigation:
# A Pocket Guide for Judges

*Third Edition*

Barbara J. Rothstein & Thomas E. Willging

Federal Judicial Center
2010

This Federal Judicial Center publication was undertaken in furtherance of the Center's statutory mission to develop educational materials for the judicial branch. While the Center regards the content as responsible and valuable, it does not reflect policy or recommendations of the Board of the Federal Judicial Center.

# Contents

Preface,  v

Introduction,  1

I.   Determining Federal Jurisdiction,  3

    A.  Burdens of proof,  4

    B.  Amount in controversy,  4

    C.  Home-state exception,  5

    D.  Local-controversy exception,  5

    E.  Discretionary jurisdiction,  6

II.  Selection of Counsel,  6

    A.  Single-lawyer model,  7

    B.  Private ordering,  7

    C.  Selection by the judge,  8

    D.  Empowered plaintiff model,  8

    E.  Competitive bidding,  8

III.  Timing and Significance of Class Certification,  9

    A.  Timing,  9

    B.  Class certification,  9

    C.  Defining the class,  9

    D.  Multiple class actions,  10

    E.  Notice,  11

IV.  Settlement Review: Risks and Issues,  11

    A.  Judge's role,  12

    B.  Obtaining information about the settlement,  13

    C.  Hot button indicators,  17

    D.  Preliminary review of the proposed settlement,  23

    E.  Warning about claims services,  25

    F.  Notice issues,  26

    G.  Claims processes and response handling,  30

    H.  Fairness hearing,  31

V.  Attorney Fee Issues,  33

    A.  Evaluating monetary and nonmonetary results achieved,  33

    B.  Methods of calculating fees,  35

    C.  "Mega" cases,  36

    D.  Objectors,  36

    E.  Role of government actors,  36

VI.  Coordination with State Judges,  38

VII. Use of Special Masters and Court-Appointed Experts,  39

Conclusion,  39

Bibliography,  40

Case Annotations by Topic,  42

# Preface

This pocket guide is designed to help federal judges manage the increased number of class action cases filed in or removed to federal courts as a result of the Class Action Fairness Act of 2005 (CAFA). The 2005 legislation expresses congressional confidence in the abilities of federal judges to ensure "fair and prompt recoveries for class members with legitimate claims" and to provide appropriate "consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b). This third edition includes an expanded treatment of the notice and claims processes. Revisions are concentrated in parts III and IV.

CAFA also calls on the judiciary to develop and implement "best practices" for achieving the goals of ensuring that settlements are fair to class members and ensuring that class members are the primary beneficiaries of any settlement. This guide is part of the federal judiciary's continuing effort to achieve those goals. This edition also carries over from the second edition suggestions based on recent empirical research indicating that the administration of settlements has been less than transparent, especially regarding the disclosure of claims rates and actual payments to class members, to the detriment of litigants and policy makers.

A note of appreciation goes to Judge D. Brock Hornby (D. Me.) for his detailed suggestions and outline of topics, which served as a catalyst and road map for the original publication. Todd Hilsee, a class action notices expert with The Hilsee Group, supplied pro bono assistance in improving the sections on notices and on claims processes. We are also grateful to Jared Bataillon, who contributed valuable research assistance for this third edition.

I hope you find this guide useful in meeting the challenges Congress has entrusted to us in managing class action litigation.

Barbara Jacobs Rothstein
Director, Federal Judicial Center

# Introduction

Federal Judicial Center materials, particularly the *Manual for Complex Litigation, Fourth* (MCL 4th), have devoted considerable attention to class actions, perhaps yielding more information than busy judges can absorb. Hence, the need for a pocket guide. In enacting the Class Action Fairness Act of 2005 (CAFA) (Pub. L. No. 109-2, 119 Stat. 4 (2005)), Congress found both that class actions "are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties" and that "abuses in class actions undermine the National judicial system . . . in that State and local courts are . . . keeping cases of national importance out of Federal courts." 28 U.S.C. § 1711 note (2009). This guide can assist you in discharging the responsibilities those cases entail. The guide distills the elements of CAFA's federal jurisdictional changes and many of the most important practices for managing class actions found in the MCL 4th, and it provides citations to cases decided after publication of the MCL 4th to illustrate many points. For your convenience, cross-references to the MCL 4th are also provided in the guide. Cases and other references are presented in the Bibliography and Case Annotations by Topic at the end of the guide.

As Congress found, class action litigation allows for the resolution of many claims that might otherwise evade legal enforcement. Class actions may also help regulators control conduct that threatens to harm various markets. Securities and other consumer class actions serve to enforce regulatory standards designed to deter fraudulent marketplace conduct that might otherwise escape regulation. Members of Congress and others who assert class actions' general utility also point, however, to abuses that threaten to undermine their usefulness. Critics single out cases in which the benefits accruing to the class as a whole and to the public seem minimal.

Class actions demand that judges play a unique role. There is no such thing as a simple class action. Every class action has hidden hazards that can surface without warning. Your role includes anticipating the consequences of poorly equipped class represen-

*Class Action Pocket Guide (3d ed.)*

tatives or attorneys, inadequate class settlement provisions, and overly generous fee stipulations. The high stakes of the litigation heighten your responsibility, and what's more, you cannot rely on the adversaries to shape the issues that you must resolve in the class context. Indeed, you have to decide first which individuals on the plaintiff side—class representatives and class counsel—can represent the class adequately and whom you should appoint to do so. And, once the adversaries agree on a settlement, you must decide—largely without any clash of views from class counsel, class representatives, or the defendant—whether that settlement is fair, reasonable, and adequate to satisfy the interests of the class as a whole. This guide attempts to clarify the class action standards that inform those decisions and to make the application of those standards more transparent and available to judges and to policy makers faced with the task of improving them. It is designed to help you determine when class representatives and counsel are "adequate" and whether a settlement's terms are "fair" to the class as a whole, "reasonable" in relation to the class's legitimate claims, and "adequate" to redress class members' actual losses.

Recent empirical research indicates that class action settlement administration has often not produced the transparent information that judges and policy makers need for reviewing class action settlements and setting clear standards for such reviews. Nicholas M. Pace & William B. Rubenstein, How Transparent Are Case Outcomes: Empirical Research on the Availability of Class Action Claims Data (RAND Corp. 2008). Not only are data about class member claims rates and actual recoveries not available to judges attempting to evaluate the benefits of a settlement to the class, but information needed to determine which claims rates are acceptable is not available to judges and policy makers concerned with setting standards for future cases. This guide discusses remedies for these deficiencies.

Now that CAFA is on the books and Federal Rule of Civil Procedure 23 has been amended, you can expect to encounter the following class action responsibilities:

- applying CAFA's federal jurisdiction and removal rules, such as its $5 million amount in controversy for the class

2

*Class Action Pocket Guide (3d ed.)*

as a whole, minimum diversity of citizenship between class members and defendants, and complex set of rules regarding federal jurisdiction when the "primary" or "significant" defendants are local citizens (discussed in part I);

- appointing counsel who have the professional skills, legal support staff, and financial resources needed to provide the class with adequate representation (discussed in part II);
- determining when and how to decide class certification motions (discussed in part III);
- establishing effective standards and procedures for evaluating the actual value to the class of proposed settlements and for determining whether the settlements are fair, reasonable, and adequate for class members (discussed in part IV);
- assessing reasonable attorney fees for class counsel by ensuring that fee awards are commensurate with the value of the results to the class as a whole (discussed in part V);
- coordinating with state judges the management of competing and overlapping class actions (discussed in part VI); and
- deciding when to use special masters and court-appointed experts to assist in managing class actions and reviewing settlements (discussed in part VII).

## I. Determining Federal Jurisdiction

CAFA provides expanded, but not unlimited, federal jurisdiction over class actions. *See* 28 U.S.C. § 1332(d). Before you invest time and energy in managing a class action, your first order of business is to determine whether you have jurisdiction. For a comprehensive show cause order form with a checklist of jurisdictional and removal issues, see *Tam v. Indymac Bank,* No. 2:8CV06458, 2008 WL 4793676 (C.D. Cal. Oct. 30, 2008).

Under CAFA, federal district courts have original jurisdiction over class actions in which the aggregate amount in controversy exceeds $5 million and in which there is "minimal diversity of citizenship," which means whenever "any member of a class of plaintiffs is a citizen of a State different from [that of] any defendant." 28 U.S.C. § 1332(d)(2). But federal jurisdiction is not available if

"the number of members of all proposed plaintiff classes in the aggregate is less than 100," 28 U.S.C. § 1332(d)(5)(B), or if "the primary defendants are states, state officials, or other government entities against whom the district court may be foreclosed from ordering relief," 28 U.S.C. § 1332(d)(5)(A), presumably because the sovereign immunity defense may preclude federal judicial remedies. Moreover, for cases that do meet CAFA's jurisdictional standards, exceptions may apply, as discussed below.

## A. Burdens of proof

Courts have generally ruled that even under CAFA, the proponent of federal jurisdiction—the plaintiff in original federal filings and the defendant in removed actions—bears the burden of demonstrating federal jurisdiction.

CAFA, which was a product of congressional compromise, sets out a number of exceptions to federal jurisdiction. Courts have been clear that the party opposing federal jurisdiction has the burden of establishing that the case falls within a statutory exception.

## B. Amount in controversy

In an original federal action, the plaintiff need only show the possibility that the amount in controversy, including statutory and punitive damages as well as statutory attorney fees, will exceed $5 million. Once the proponent of federal jurisdiction has established the possibility that the amount in controversy exceeds $5 million, only legal certainty that the judgment will be less precludes federal jurisdiction. So, unless there is a dispute regarding the amount in controversy or it is evident that the $5 million amount could not possibly be satisfied, you can accept well-pleaded allegations that $5 million or more is at stake.

In a case removed from a state court, courts continue to hold that the plaintiff is the master of the complaint and courts are compelled to accept a plaintiff's allegations that the amount in controversy is less than $5 million unless a defendant shows to a legal certainty that damages of more than that amount will be established. Moreover, the party challenging federal jurisdiction generally has to provide more than allegations; indeed, that party

*Class Action Pocket Guide (3d ed.)*

must provide competent evidence of the facts supporting the challenge.

Where the plaintiff has not pleaded a cap on damages, costs, and attorney fees, the court may have to resolve disputes about the amount in controversy. A defendant who removes a case has the burden of showing not only the possible stakes of the litigation but also a reasonable probability that the stakes exceed the $5 million mark. Generally, information alleged in the notice of removal, perhaps supplemented by declarations or affidavits, will suffice.

## C. Home-state exception

Section 1332(d)(4)(B) of title 28 of the U.S. Code provides that a court must decline to exercise jurisdiction over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." As discussed above, the objecting party, typically the plaintiff, has the burden of proving that this exception applies. Proof of an exception, however, requires more than an allegation and may require affidavits and evidence. For an example of an apparently efficient way of producing proof of citizenship for class members in the form of a questionnaire, see *Martin v. Lafon Nursing Facility of the Holy Family, Inc.,* 548 F. Supp. 2d 268, 273–78 (E.D. La. 2008). CAFA states that for the exception to apply, all primary defendants must be citizens of the home state, but does not define the term "primary defendant."

## D. Local-controversy exception

Section 1332(d)(4)(A) of title 28 of the U.S. Code creates what has been called the "local-controversy exception" to CAFA jurisdiction. CAFA spells out four elements that make up the exception:

1.  two-thirds of the class members are citizens of the original forum state;
2.  plaintiffs seek "significant relief" (another undefined term) from at least one defendant who is a citizen of the forum state;

*Class Action Pocket Guide (3d ed.)*

3. "principal injuries resulting from the alleged conduct . . . were incurred" in the forum state; and

4. no other class action asserting similar allegations against any of the defendants has been filed within three years preceding the filing.

Few appellate opinions apply or interpret the above terms, but the exception as a whole has been viewed narrowly. A defendant from whom "significant relief" is sought appears to be less central to the litigation than a "primary defendant" referred to in the home-state exception. Likewise, the term "principal injuries" calls for an interpretation that almost all of the injuries occurred within the state.

## E. Discretionary jurisdiction

Under CAFA, a federal court may "in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" over a class action in which more than one-third but less than two-thirds of the class members are citizens of the original forum state. 28 U.S.C. § 1332(d)(3). The Act lays out six factors for a court to consider before exercising its discretion, starting with "whether the claims asserted involve matters of national or interstate interest" and proceeding to factors related to the forum state's legal self-interest and nexus to the class members and harms alleged. Like the other exceptions, these provisions have been interpreted and applied by few appellate courts. One of the few cases to expand on the statutory language is *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.,* 485 F.3d 804, 822–24 (5th Cir. 2007), which concluded that a class action lawsuit involving Hurricane Katrina-related injuries did not affect a "national interest."

# II. Selection of Counsel

Attorneys representing classes are in a position to control the litigation process far more than attorneys representing individual clients. The class action device enhances the role of such lawyers by virtue of the fact that even the approved class representatives do not have legal control over the litigation. Your power to appoint

*Class Action Pocket Guide (3d ed.)*

counsel and approve or reject a class settlement may be the only checks and balances on the power of attorneys for the class.

There are at least five approaches to selection of counsel in class action litigation. Note that in multidistrict litigation (MDL), the transferee judge has the authority to appoint lead and liaison counsel regardless of whether class claims are involved. *See* MCL 4th § 10.22. Whatever approach you use, it is important to make clear to counsel at the outset the content and form of records you require to support applications for awards of fees and expenses or for a lodestar cross-check. *See* part V, "Attorney Fee Issues," below, and MCL 4th § 14.21. You may find it useful to instruct class counsel that all lawyers should submit fee and expense requests in a similar format—one that will be accessible to the court.

## A. Single-lawyer model

In the typical class action, the lawyer who filed the case will be the only logical choice for appointment as class counsel. That lawyer may have investigated the case independently or may have spoken with government regulators, investigative journalists, or other public information sources. In those cases, the task of selecting counsel consists of determining that the filing attorney satisfies Rule 23(g) standards, that is, has the requisite knowledge of the substantive law, class action legal experience, and financial and staff resources to represent the class adequately. That attorney, of course, must not have a conflict of interest with the class.

## B. Private ordering

In high-stakes, high-profile class action litigation, entrepreneurial plaintiff attorneys often compete to play the lead role. This competition may be heightened when the case piggybacks on a case investigated and perhaps litigated or prosecuted by a governmental entity. Nonetheless, substantial resources may be necessary to finance the expenses of the litigation. Most often, attorneys in such cases attempt to resolve the competition by "private ordering," that is, by agreeing to divide the labor, expenses, and fees. To safeguard the interests of the class and to prevent unnecessary litigation and overstaffing, you may want to review those agreements (which will

*Class Action Pocket Guide (3d ed.)*

be subject to disclosure upon settlement in any event). MCL 4th
§ 21.272.

## C. Selection by the judge

In the absence of private ordering, you will have to select among
competing counsel by reviewing submissions based on the factors
identified in Federal Rule of Civil Procedure 23(g)(1)(C). That
section explicitly permits you to include in the order of appoint-
ment "provisions about the award of attorney fees or nontaxable
costs." Few judges have unilaterally imposed strict limits on fees
in the order of appointment. Consider, however, requesting that
counsel submit ex parte or under seal a proposed budget for fees
in the case. The budget would serve as an *ex ante* record of the pro-
jected time and expense the case might require; judicial review of a
proposed fee award at the end of the case would still be necessary,
but would most likely be easier.

## D. Empowered plaintiff model

As mentioned earlier, Rule 23(g) presents explicit criteria and a
procedure for appointing counsel to represent the class. For se-
curities class actions, the Private Securities Litigation Reform Act
(PSLRA) directs you to employ a special procedure for selecting
an "empowered" lead plaintiff (presumptively one with sizable
claims), who, in turn, has the right to select and retain class coun-
sel, subject to your approval.

## E. Competitive bidding

In a very narrow set of cases, a few courts have used competitive
bidding to select counsel. After an intensive study, a task force in
the Third Circuit concluded that competitive bidding "should be
an exception to the rule that qualified counsel can be selected ei-
ther by private ordering or by judicial selection of qualified coun-
sel . . . ." Third Circuit Task Force, *Report on Selection of Counsel,* 74
Temp. L. Rev. 689, 741 (2001).

*Class Action Pocket Guide (3d ed.)*

# III. Timing and Significance of Class Certification

## A. Timing

The 2003 amendments to Rule 23(c)(1) give you flexibility by allowing you to consider class certification "at an early practicable time." Considering this rule, you should feel free to ignore local rules calling for specific time limits; such local rules appear to be inconsistent with the federal rules and, as such, obsolete. *See* MCL 4th § 21.133. The amended rule allows you to rule on motions to dismiss or for summary judgment before ruling on class certification.

## B. Class certification

Given the flexibility in the rules, the most efficient practice is to rule on motions to dismiss or for summary judgment before addressing class certification.

Determining whether a proposed class meets Rule 23 certification requirements demands a rigorous analysis. You have discretion to decide on both the extent of discovery and whether or not to hold a hearing to determine whether the requirements have been met. You need to make factual and legal determinations with respect to the requirements of Rule 23.

Ruling on class certification may prove to be unnecessary. The most important actions you can take to promote settlement are to rule on dispositive motions and then, if necessary, rule on class certification.

If the parties decide to talk about settlement before you make any ruling on class certification, they may urge you to certify a class for settlement purposes only—a *settlement class*—as opposed to certifying a *litigation class* for a possible trial. *See* section IV.C.8 below; *see also* MCL 4th § 21.131–.132.

## C. Defining the class

Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and

9

*Class Action Pocket Guide (3d ed.)*

(3) entitled to notice in a Rule 23(b)(3) action. The definition must be precise, objective, and ascertainable. For example, the class may consist of those persons and companies that purchased specified products or securities from the defendants during a specified period, or it may consist of all persons who sought employment with, or who were employed by, the defendant during a fixed period. *See* MCL 4th § 21.222. Your certification order should specify those who are excluded from the class, such as residents of particular states, persons who have filed their own actions or are members of another class, and officers and directors of the defendants.

Consider also whether the class definition captures all individuals or entities necessary for the efficient and fair resolution of common questions of fact and law in a single proceeding. If the class definition fails to include a substantial number of persons with claims similar to those of the class members, it is questionable. A broader class definition or definition of a separate class might be more appropriate. Feel free to suggest broader or narrower definitions that would make a proposed class more manageable. If the class definition includes people with similar claims but divergent interests or positions, subclasses with separate class representatives and counsel might suffice. *See* MCL 4th § 21.23.

*Issues classes* are classes certified for particular issues or elements of claims or defenses. Though controversial and subject to conflicting rules in different circuits, issues classes "may enable a court to achieve economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action." MCL 4th § 21.24. The test is whether the resolution of common issues advances the litigation as a whole, as opposed to leaving a large number of issues for case-by-case adjudication.

### D. Multiple class actions

Finally, consider class certification in the context of duplicative or overlapping class action litigation pending in other federal and state courts. Be sure to "obtain complete information from the parties about other pending or terminated actions in federal or state courts relating to the claims presented." MCL 4th § 21.25. At

*Class Action Pocket Guide (3d ed.)*

the outset of any class action, consider entering a standing order that requires counsel to inform the court promptly of any related class actions. Communication and administrative coordination with other judges will often be necessary. Other things being equal, federal judges should exercise federal jurisdiction over classes of nationwide scope; actions limited to single states can be carved out of any national certification.

### E. Notice

If you certify a class for litigation purposes, be prepared to decide on notice and allow members of Rule 23(b)(3) classes the opportunity to opt out before the trial. In fact, whether adequate notice *can* be given may be a significant factor in determining manageability as part of your class certification decision. *See In re* Vivendi Universal, S.A. Securities Litigation, 242 F.R.D. 76, 107–09 (2007). Class members, particularly unknown ones, must be able to understand that they are included. This could be a problem, for example, if the class member must recall making modest retail purchases in certain places, or know that a certain component is contained in a product. For a discussion of general notice and communication factors, see section IV.F, "Notice issues," below, as well as the "Notice Checklist and Plain Language Guide" available at the Class Action Notices Page at www.fjc.gov. The Federal Judicial Center provides examples of illustrative class certification notices on our website.

## IV. Settlement Review: Risks and Issues

Reviewing proposed settlements and awarding fees are usually the most important and challenging assignments judges face in the class action arena. Unlike settlements in other types of litigation, class action settlements are not an unequivocal blessing for judges. Rule changes, precedent, recent legislation, and elemental fairness to class members direct you not to rubber-stamp negotiated settlements on the basis of a cursory review. Current rules, particularly Federal Rule of Civil Procedure 23, unambiguously place you in the position of safeguarding the interests of absent class members by scrutinizing settlements approved by class counsel. Recognizing

the importance of this, the California panel dealing with complex litigation has drafted guidelines specifying content for motions for preliminary and final approval of proposed class settlements. *See* California Superior Court, Guidelines for Motions for Preliminary and Final Approval of Class Settlement (Draft May 3, 2010).

Be aware that adversarial clashes usually end with the settlement. Indeed, most settlements preclude the parties and attorneys from opposing the settlement's provisions, especially the stipulations about attorney fees. Thus, you need to take independent steps to get the information you will undoubtedly need to review a settlement agreement.

## A. Judge's role

The judge's assigned task of approving or disapproving a class settlement presents exceptional challenges. Some courts "have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class" and to impose "the high duty of care that the law requires of fiduciaries." Reynolds v. Beneficial National Bank, 288 F.3d 277, 280 (7th Cir. 2002).

Because the class itself typically lacks the motivation, knowledge, and resources to protect its own interests, and because settling counsel for both plaintiff and defendant have little or no incentive to offer information adverse to the settlement, you need to examine critically the class certification elements, the proposed settlement terms, the proposed notice plan, and the procedures set out for implementing the proposed settlement. *See* MCL 4th § 21.61. You need to identify possible sources of information about the settlement and use them to obtain, for example, agreements or understandings among counsel, the views and experiences of objectors, and the complete terms of the settlement. The next section (IV.B) discusses all of those informational sources.

Reviewing a proposed settlement calls for you to use your traditional judging skills. The central questions relate to the merits of the claims and defenses:

- What are the class claims?
- How strong are they?

12

*Class Action Pocket Guide (3d ed.)*

- What is the range of values of a successful claim?
- How likely is the class to succeed on each claim in further litigation, including trial?

You may decide to avoid a definitive statement on the merits because the settlement may fail and the case may come to trial. Nonetheless, it seems absolutely necessary to obtain information and arguments from the parties about their assessment of the probabilities of success and their projection of a realistic range of possible recoveries. *Reynolds,* 288 F.3d at 284–85, discusses this approach further. While party submissions may influence your judgment about the merits, keep in mind that the parties have their own interests in supporting the settlement. You may need to search elsewhere for information that will allow you to take an independent and hard look at the merits of the claims and defenses.

## B. Obtaining information about the settlement

The key to reviewing a settlement is to obtain information about

- the settlement's terms;
- the merits of the class members' claims;
- the reasons for settling those claims;
- the settlement's benefits to the class;
- the number of claims actually filed by class members;
- the amount of the settlement that is likely to be distributed to class members;
- the reasons for any opposition to the settlement; and
- the effect of the settlement on other pending litigation.

This section presents a number of suggestions for gathering settlement information, starting with a provision from amended Rule 23.

### 1. Rule 23(e)(3) agreements and prior individual settlements

Federal Rule of Civil Procedure 23(e)(3) directs the parties to "file a statement identifying any agreement made in connection with the proposed settlement." Let the settling parties know that you expect them to provide the full settlement agreement as well as an informative summary of other agreements, such as settlement agreements for claims similar to those of class members; side un-

*Class Action Pocket Guide (3d ed.)*

derstandings about attorney fees; and agreements about filing fu-
ture cases, sealing of discovery, and the like. *See* MCL 4th § 21.631.
The idea is to identify documents that directly or implicitly suggest
the attorneys' perceptions of the value of the class claims and that
may point to funds that might otherwise be available to compen-
sate the class, including attorney fees and payments to objectors.

Consider directing the parties to provide additional informa-
tion to aid your assessment of the settlement. Often, information
about related parallel and overlapping cases, including amounts
paid to individual plaintiffs or claimants, will shed light on the
value of the class's claims. If prior settlements were confidential,
direct the parties to provide information for you to review in cam-
era. Pressing the parties to provide objective information about
the merits and value of the individual claims should advance your
effort to pin down the merits and value of the class claims. Make
sure the parties identify and justify any differences in treatment
of various types of class members. Expert evaluations of the costs
and present monetary value of all aspects of the settlement to the
class may be available. Ask counsel what information they used to
satisfy their professional obligation to advise their clients about
the value of the proposed settlement.

### 2. Preliminary review hearing

Holding a preliminary review hearing will afford you another op-
portunity to obtain information. If you are deciding whether to
certify a class at this stage, direct the parties to give you all the
information and arguments needed to apply the Rule 23(a) and
(b) criteria. How numerous is the class? What are the common
questions of law and fact, and do they predominate? Why is the
class action superior to other forms of adjudication?

At the preliminary hearing stage, determine whether the no-
tice to the class will reach a high percentage of the members (see
section IV.F below), and whether it should include claims forms
and instructions for completing the claims process before the final
hearing. Establishing a claims procedure at this stage can provide
you with valuable information about class members' rate of pre-
senting claims, information that is often essential in identifying

*Class Action Pocket Guide (3d ed.)*

the true size of the settlement fund, and in making your fairness determination. An early claims procedure might also simplify administrative costs, as discussed below in section IV.B.4. The benefits of any early claims procedure need to be weighed against the possibility that you will decide not to approve the settlement.

### 3. Subclasses

Information gleaned from reviewing class certification papers should also inform you about any need for subclasses to represent separate interests. *See* MCL 4th § 21.23. The preliminary review hearing is usually the last practical opportunity to create subclasses. Appointing counsel for subclasses will generally have the practical effect of sending the parties back to the negotiating table to deal with the interests of the new subclasses.

### 4. Prior action by government entities

When a government regulator has sought or obtained a monetary remedy for a class, examine the description of the intended beneficiaries of the government's action and decide whether you should define the class to be certified in the same way. Aligning the class definition with the description of the beneficiaries in the governmental action will most likely produce efficiencies in notifying the class, reviewing the settlement, distributing the proceeds, and evaluating requests for fees.

Typically, public enforcement actions result in a consent decree, but the government agency may have the statutory power to order rescission of agreements and restitution or disgorgement of profits from illegal activities, as the court recognized in *In re First Databank Antitrust Litigation,* 209 F. Supp. 2d 96, 98 (D.D.C. 2002). When an agency action or criminal prosecution against a business or its officers is successful, a private class action may well follow on its heels. In the context of an agency action, the class action can serve as the vehicle for distributing monetary relief to the class. In *In re First Databank,* for example, the Federal Trade Commission (FTC) got the defendant to agree to a $16–19 million figure for the disgorgement remedy. Private plaintiffs increased that amount by $8 million, and the final disgorgement figure was expressly

15

*Class Action Pocket Guide (3d ed.)*

declared to be for the purpose of settling the private class action lawsuits. As discussed in connection with attorney fees below in section V.E, asking the parties to be clear about which entity produced which portion of the award will simplify your decisions on attorney fees.

### 5. Appraisal of settlement

Your appraisal of the settlement should focus on the value actually distributed to the class—based on the number and percentage of class members who have filed a claim. As discussed below in section IV.C.4, strict eligibility requirements and cumbersome claims procedures often discourage class claims and might reduce the total amount paid to class members, making the stated value of the settlement fund illusory. Because there is no clear standard for predicting class response rates, consider calculating any attorney fee award as a percentage of the amount of the settlement fund that has already been distributed to the claimants—even if that means deferring final determination of all or part of the fee award until the claims process is complete.

At or after the preliminary review hearing and after reviewing the sources of information discussed above, consider whether you need an expert's appraisal of the value of nonmonetary or contingent monetary components of the settlement. If so, this is the time to appoint an expert, special master, magistrate judge, or other judicial adjunct, as discussed below in part VII. As a practical matter, waiting for objections or for the settling parties' presentations at the fairness hearing will be too late. *See* MCL 4th § 21.644.

### 6. Information from objectors

Before and during the fairness hearing, you might receive written objections and testimony from objectors. Objectors might contribute to your review in various ways. Attorneys who represent competing or overlapping classes, such as those in state actions, may have useful information on the value of the underlying claims. Similarly, attorneys representing individual claimants who seek a better recovery for their alleged injuries may help you identify the

16

*Class Action Pocket Guide (3d ed.)*

strengths and weaknesses of the settlement and the trade-offs that led to the agreement. They may represent class members in state court actions with strong state law claims, which would be released by the settlement you are faced with.

Be sure to monitor any separate agreements to settle the claims of these objectors. If objectors settle for the same per capita amount as the class, that tends to validate the settlement (assuming that other factors are equal). If they settle for more than the class members, ask the settling parties to justify the differential. A higher settlement for objectors with similar damage claims might signify that the class members did not receive full value for their claims.

Institutional "public interest" objectors may bring a different perspective. Watch out, though, for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests. Rule 23 gives you authority to scrutinize as part of the overall class settlement any side agreements to "buy out" such objectors.

Generally, government bodies such as the FTC and state attorneys general, as well as nonprofit entities, have the class-oriented goal of ensuring that class members receive fair, reasonable, and adequate compensation for any injuries suffered. They tend to pursue that objective by policing abuses in class action litigation. Consider allowing such entities to participate actively in the fairness hearing. *See* MCL 4th § 21.643.

### C. Hot button indicators

Some settlement terms show their potential unfairness on their face; we call them "hot button indicators." At the preliminary review stage, signaling your concerns about a proposal containing one or more of such indicators may allow you and the parties to create a notice and hearing process that will correct any deficiencies without the need for multiple hearings. Hot button indicators include any remedy to which you cannot confidently assign a cash value.

*Class Action Pocket Guide (3d ed.)*

1. Coupons

CAFA calls for judicial scrutiny of coupon settlements and re-
stricts the use of unredeemed coupons in calculating fees for class
counsel. *See* 28 U.S.C. § 1712 (2008). It is important to discern
whether attorney fees are being calculated using the face value of
the coupons instead of the value of coupons actually redeemed.
Determine whether the proposed coupons

- are transferable;
- have a secondary market in which they can be discounted
  and converted to cash;
- compare favorably with bargains generally available to a fru-
  gal shopper; and
- are likely to be redeemed by class members.

Coupon settlements were rare even before the passage of CAFA.
Occasionally, you may find that transferable coupons have some
value to a class of repeat users of a product or service, as they did
in *In re Mexico Money Transfer Litigation,* 267 F.3d 743, 748 (7th
Cir. 2001). Determining the precise value to the class of the rare
beneficial coupon settlement, though, calls for hard data on class
members' redemption of the coupons.

2. Negative options

Watch for a variant of the coupon settlement—the negative op-
tion, which is a gift or benefit that requires the recipient to take
affirmative action to cancel it before a continuing obligation to
pay arises. The FTC has aptly termed the negative option a "pro-
motional gimmick." For example, in a California state class action,
plaintiffs alleged fraud and deceptive and unfair business practices
against a company selling DVD subscription services. The parties
agreed to settle these claims for a one-month membership up-
grade for current members and a "free" one-month membership
for past members who had canceled. The catch was that both of
these "benefits" would continue until the class member took af-
firmative steps to cancel the membership. In other words, the free
service was converted automatically into an obligation to pay for
future services. Apparently as a result of the FTC's amicus curiae
participation, the parties renegotiated the settlement to remove

18

*Class Action Pocket Guide (3d ed.)*

the automatic renewal feature and the court approved a revised settlement. Chavez v. Netflix, Inc., 75 Cal. Rptr. 3d 413, 418–21 (Cal. Ct. App. 2008). For a general definition of negative options and the FTC regulations governing them, see *Use of Prenotification Negative Option Plans,* 16 C.F.R. pt. 425 (2008).

3. *Cy pres* relief ("fluid recovery")

The term "*cy pres*" has migrated from the trust field into the sometimes less appropriate realm of class action litigation. Literally, *cy pres* means "as near as possible" to the original purpose. In the class action context, recovery for individual class members is sometimes not possible or practical. In these instances, the class is so large and the potential recovery per class member so small that the cost of administering a single claim would exceed the benefit to any individual. Individual reimbursement for taxi fare overcharges is a classic example.

*Cy pres* relief must come as close as possible to the objective of the case and the interests of the class members. Question whether the class members might feasibly obtain a personal benefit. Look for evidence that proof of individual claims would be burdensome or that distribution of damages would be costly. If individual recoveries do not seem feasible, examine the proximity or distance between the *cy pres* recipient's interests or activities and the particular interests and claims of the class members. When *cy pres* relief consists of distributing products to charitable organizations or others, press for information about whether the products in question have retained their face value or might be out-of-date, duplicative, or of marginal value. In the end, *cy pres* awards may be an excellent way to avoid the restrictive claims processes and reversion clauses discussed in the next section.

4. Restrictions on claims/reversion of unclaimed funds to defendants

Limits on the amount of recovery per claimant, strict eligibility criteria for claimants, or other procedural or substantive obstacles to honoring claims from class members may dramatically reduce the apparent value of a settlement. Coupled with a provision that

19

any unclaimed funds revert to the defendant at the end of the claims period (a provision that is generally disfavored, as discussed in the next paragraph), restrictions on eligibility are likely to substantially diminish the overall value of a settlement to the class. The addition of a "clear sailing" agreement (i.e., a stipulation that attorney fees based on the inflated settlement figure will not be contested) to an agreement with a reversion clause adds decibels to the alarms set off by the reversion clause. Some courts treat the combination as creating a presumption of unfairness.

A reversion clause creates perverse incentives for a defendant to impose restrictive eligibility conditions and for class counsel and defendants to use the artificially inflated settlement amount as a basis for attorney fees. Instead of approving a settlement with a reversion clause, consider encouraging the parties to use an alternative approach, such as distributing the entire settlement fund to the class members who file claims. Prorating the fund in that way avoids the possibility of unclaimed funds and is a standard practice in securities class settlements. For a discussion of alternative ways of prorating a settlement fund, see Francis E. McGovern, *Distribution of Funds in Class Actions-Claims Administration*, 35 J. Corp. L. 123 (2009).

To align plaintiff counsel's interests with those of the class, to discourage the use of a reversion clause, and to negate the effect of a clear sailing agreement, consider linking the award of attorney fees to the value of the funds distributed to the class or the coupons redeemed by the class (see section V.B below).

### 5. Collusion: "Reverse auctions" and the like

An imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorney fees is a prime indicator of collusion by settling attorneys. For example, in a settlement with both monetary and nonmonetary relief, if the attorneys receive the lion's share of the cash and the class receives primarily nonmonetary relief, including future warrants, coupons, and the like, you should look for solid information to justify the imbalance. Likewise, you should scrutinize an agreement that provides that attorneys receive a noncontingent cash award and that class

*Class Action Pocket Guide (3d ed.)*

benefits are contingent on settlement approval and claims made. *See* MCL 4th § 21.71.

"Reverse auction" is the label for a defendant's collusive selection of the weakest attorney among a number of plaintiff attorneys who have filed lawsuits dealing with the same subject matter; in other words, a reverse auction is the "sale" of a settlement to the *lowest* bidder among counsel for competing or overlapping classes. *See* MCL 4th § 21.61, text at n.952 and sources cited therein. For a recent example of a district court's thorough analysis of a proposed settlement with reverse auction principles at the forefront, see *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007). In *Figueroa,* the court rejected a "Third Amended Settlement Agreement" in part because the defendant "selected counsel confronted with a most precarious position . . . and then proceeded to offer and convince Class Counsel to accept highly undesirable terms to settle the case." Determining whether a reverse auction might have occurred requires information about all litigation dealing with the subject of the dispute.

Another major indicator of a reverse auction is a difference between the apparent value of the class claims on the merits and the value of the settlement to class members. A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in negotiating the settlement. Generally, the overpayment of the attorneys originates in an underpayment of what the class should receive based on an objective assessment of the merits of the class claims.

Sometimes, the settlement will be with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, an especially suspicious circumstance. Questionable settlements between class counsel and the same defendant in unrelated cases may suggest a continuing collusive relationship.

## 6. Injunctive relief

Question whether injunctive relief will truly benefit class members in the case at hand. In many cases, by putting an end to illegal practices, an injunction will benefit more class members than a small award. It will also avoid clogging the judicial system with

*Class Action Pocket Guide (3d ed.)*

the administration of small awards to thousands of class members. But it is important to press the parties to identify such cases clearly and justify the remedy and fees. Ask yourself—and perhaps the parties—the following questions:

- How much is the injunction worth to the class as a practical matter?
- What is the dollar value the relief might yield?
- What is the real cost to the defendant?
- Does the injunctive relief do more than restate the obligation that the defendant already has under existing law or under a decree entered by a regulatory body?
- Are there viable damage claims that class counsel has not pursued?
- Might an emphasis on injunctive relief and proposed certification of a Rule 23(b)(2) class amount to a tactical move to avoid more stringent certification requirements and opt-out rights associated with a damages class under Rule 23(b)(3)?

Consider whether you need independent expert advice to place a value on the relief offered, as discussed below in part VII.

### 7. Release of liability without remedy

A natural impulse on the part of settling parties is to attempt to expand the class and release claims of those on the periphery of the class, such as the spouses and children of class members, without providing any direct benefit to those individuals. At times parties have attempted to release a damages remedy without making any correlative payment to class members, as the parties attempted to do in *Reynolds,* 288 F.3d at 283–84. Unpled claims against outside parties (e.g., medical malpractice claims in a class action against a pharmaceutical manufacturer) are sometimes swept into the settlement. The settlement should compensate class members or their families for the value of such claims. As a general rule, the release of claims by a subclass should be linked with specific remedies, such as payments to the subclass or increased payments to class members based, for example, on their family status.

8. Settlement class actions

Certification of class actions solely for the purpose of settlement at an early stage of the litigation generally makes meaningful judicial review more difficult and more important. MCL 4th § 21.612. Parties frequently agree to settle class actions before a judge has decided that a class can be certified under Rule 23. The parties then jointly seek certification in the context of the settlement. Often, the parties' agreement that a class can be certified is conditioned on judicial approval of the settlement. The Supreme Court has ruled that agreement of the parties does not lessen the need for a judge to determine whether all of Rule 23's certification standards other than manageability have been met. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997); MCL 4th § 21.132.

## D. Preliminary review of the proposed settlement

Judicial review of a proposed class settlement generally requires two hearings: one preliminary and one final. MCL 4th § 21.632. If you haven't already certified a class, you should determine during the preliminary fairness review whether the proposed class meets the standards of Rule 23(a) and (b). By doing this, you can avoid unnecessarily using scarce judicial and party resources to schedule a fairness hearing for a class that doesn't meet Rule 23 certification standards.

If you decide to certify the proposed class, be aware that courts, following the Supreme Court's lead in *Amchem,* have ruled that the settlement terms of a settlement class action need careful scrutiny. Often, such a settlement comes early in the litigation, so you may have to probe to uncover the strengths and weaknesses of the parties' claims and defenses as well as the character of their negotiations. There may be conflicts among groups within the proposed class. Question whether the claims of class members are homogeneous. If they are not, explore the possibility of creating subclasses and sending the parties back to renegotiate and take into account the differing interests of class members.

Preliminary review of the proposed settlement affords you an opportunity to express any concerns you may have about the "hot button indicators" discussed above in section IV.C. You don't have

23

*Class Action Pocket Guide (3d ed.)*

the power to decide what must be in a settlement agreement, but you do have the opportunity to state your concerns about provisions—or the absence of provisions—that would make a difference in your decision about whether to approve a proposed settlement. If you have such concerns, consider allowing the parties some time to respond to them by renegotiating the settlement so that the class notice can refer as closely as possible to a final settlement. If you hold back your concerns and reject a settlement at the final fairness hearing, the parties will most likely have to incur the considerable expense of sending new notices of any revised settlement to the class.

Consider seeking preliminary input into the fairness, reasonableness, and adequacy of the proposed settlement. For example, one judge permitted counsel pursuing independent state class actions against the same defendants to intervene as "an offsetting influence" to the loss of adversarial opposition from the parties. *In re* Lupron Marketing & Sales Practices Litigation, 345 F. Supp. 2d 135, 138 n.5 (D. Mass. 2004). Participation by such plaintiffs' counsel provided the judge with a unique opportunity to receive an informed assessment by nonsettling plaintiffs of the value of the case and the prospects for success at trial. Absent such an opportunity, consider asking the parties or others to provide preliminary information supporting the proposal.

Though not necessarily unfair, *conditional settlements* present a special problem to the class and the judge. Sometimes, a defendant resists settlement unless it can be assured that the number of class members opting out of the proposed settlement will not exceed a certain number that is specified but not widely disclosed. To avoid unduly delaying the settlement review, you may decide to press the parties to set a reasonable cutoff date for the defendant's decision about whether to proceed with the settlement, say thirty days after the end of the opt-out period. MCL 4th § 21.652. In any event, you should require the defendant to make an election before the fairness hearing.

Remember that any preliminary "approval" or other endorsement of the proposed settlement should not appear to be a commitment to approve the settlement in the end. Any preliminary

24

*Class Action Pocket Guide (3d ed.)*

finding should be that the proposed settlement is within the range of reasonableness; such a finding is not a final judgment that the proposal is fair, reasonable, and adequate as shown by evidence at the fairness hearing. Reserve that judgment and expect to be informed by counsel for the class and counsel for the defendants (maybe in response to your pointed questions), and by class members, objectors, lawyers from similar litigation, or, perhaps, your own expert or special master. Bring an inquiring mind to the preliminary review hearing and, as noted above, seek out the information you need to decide whether the settlement is fair, reasonable, and adequate.

Once you are satisfied that the proposed settlement warrants your preliminary approval, review the parties' proposed plan for notice and hearing. Generally, counsel will present the settlement proposal and a notice plan at the same time. The purpose for reviewing the notice plan at this stage is "to determine whether any defects in the proposed notice or other formal or substantive irregularities exist that warrant withholding notice." American Law Institute, Principles of Aggregate Litigation § 3.03(a) (2010) Before reviewing the proposed notice plan, consider whether you want to direct that class members' claims for monetary relief be filed in response to the notice and before the final review hearing (see section IV.B.2 above) The class's response to the settlement will help you analyze the settlement's value and evaluate its adequacy as seen through the eyes of class members deciding their own interests. Knowing the claims rate will also provide a basis for your assessment of requests for attorney fees. In any event, to remedy the current lack of knowledge about claims rates and class member recoveries, judges should routinely order the parties to report such information to the court and place it in the public record.

### E. Warning about claims services

Consider also whether you want to direct the parties to include in the notice and claims form some provisions that warn class members about the potential pitfalls in dealing with claims filing services, a cottage industry that offers to gather and file claims for

*Class Action Pocket Guide (3d ed.)*

class members. Such services can increase the claims rate and provide a service to class members, but they do not generally add any value to a claim. The worst pitfall is that some claims services have absconded with funds. Protections in the form of requiring claims filing services to register with the court and maintain funds in a trust account may be in order.

### F. Notice issues

Opt-out notice binds class members by their silence, so you will want to focus on ensuring adequate notice. This pocket guide emphasizes notice issues because notices that fail to reach class members, or that confuse them, are all too common. They result in very low participation rates and discredit the class action procedure.

This section highlights some of the key notice issues. The "Notice Checklist and Plain Language Guide," available at the Class Action Notices Page at www.fjc.gov, details important considerations for notice to class members in several areas.

### 1. Notice to government regulators

CAFA requires that within ten days after a proposed settlement is filed in court, each participating defendant must serve notice of specified settlement-related papers on (1) the U.S. Attorney General or, in the case of a depository institution, the primary federal regulatory official *and* (2) the primary state regulatory official (or, if none, the attorney general) of each state in which a class member resides. 28 U.S.C. § 1715 (2008). The idea is to encourage government regulators to participate in reviewing settlements and lend their expertise (and perhaps an adversarial note) to the fairness hearing. You may want to consider extending an express invitation—to the preliminary approval hearing and to the fairness hearing—to any regulatory body you have found to be effective in dealing with the subject matter in question.

The Federal Trade Commission has extensive statutory authority and expertise in dealing with antitrust, unfair competition, and consumer protection matters. *See generally* FTC, Fulfilling the Original Vision: The FTC at 90 (Apr. 2004) (available at http://ftc.gov/os/2004/04/040402abafinal.pdf). CAFA does not

*Class Action Pocket Guide (3d ed.)*

specify the FTC as an agency that must receive notice, but consider adding the FTC to the notice list in consumer and trade practice litigation, including antitrust actions. The FTC has created a "Class Action Fairness Project," which channels FTC resources into reviewing proposed settlements as well as class counsel requests for attorney fees. Since defendants have made copies of—or electronic links to—the required settlement documents for other agencies, it will be no burden on them to send notice to the FTC or other consumer protection entities in appropriate cases.

## 2. Notice to the class

Notices are usually the only way to communicate with unnamed class members and enable them to make informed decisions about whether to participate in a class action settlement, or to exercise their due process rights to be heard before final approval of the settlement. Your primary goals are that the notice reach as many class members as possible, preferably by individual notification (*see* Rules 23(c)(2) and 23(e)(1) and MCL 4th § 21.312), and that the recipients see it, recognize its connection to their lives and self-interests, read it, and act on it. *See* Todd B. Hilsee et al., *Do You Really Want Me To Know My Rights?* 18 Geo. J. Legal Ethics 1359 (2005).

The first challenge is to *reach* a high percentage of class members. Notice plans that appear reasonable may in fact reach only a small percentage of class members. Before approving a notice plan, consider asking for calculations to demonstrate the "reach"—i.e., the net percentage of class members who will receive or otherwise be exposed to a notice. You can use reach statistics to substantially improve the net reach to class members. The norm is in the 70–95% range. Consider asking whether the proposed notice plan was created by a vendor who will be paid to implement it if approved. If so, consider obtaining an independent analysis of the notice plan's adequacy before approving the plan. Competing vendors may cut corners to win the business, but you must find the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). To satisfy due process, the notice must reflect a "de-

27

*Class Action Pocket Guide (3d ed.)*

sire to actually inform." *See* Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306 (1950).

Be certain the notice plan includes individual notice to all "reasonably identifiable" class members under Rule 23(c)(2). The plan should take steps to update addresses before mailing and provide for re-mailing notices to better addresses when returned as undeliverable. *See* Jones v. Flowers, 547 U.S. 220 (2006). The U.S. population is highly mobile today, so class lists compiled for business purposes may be out of date.

Next, it is important to give the class member a reason to *read* the notice. In a world in which junk mail and spam can easily drown out important messages, you may need to press the parties to look beyond the formal legal requirements and find a way to communicate the gist of a class action notice in an attention-getting and understandable format. Rule 23(c)(2)(B) commands that notices "clearly and concisely state in plain, easily understood language" the elements of class action notices. Boilerplate legal language almost never does the job. With help from linguists, communications specialists, a notice expert, and focus groups, the Federal Judicial Center prepared several illustrative notices. See the Class Action Notices Page at www.fjc.gov; there you can also see the "Notice Checklist and Plain Language Guide," which explains important features of the illustrative notices. For a handy booklet on notice principles, see Rust Consulting, Inc. & Kinsella Media, LLC, *Plain Language Primer for Class Action Notice* (undated) (available at http://www.kinsellamedia.com/Knowledge_Sharing.aspx).

The headline of a notice should tell potential class members at a glance why they should—or should not—bother to read the notice; what the notice is about; and what benefit the reader might gain from reading the notice. For example, a notice of an asbestos settlement might start with this headline: "If you have been exposed to an asbestos product, you may have a claim in a proposed class action settlement" and provide enough information to identify potential benefits and options as well as referral to a website or a toll-free telephone number for additional information. The goal is to get class members to read the notice and make an informed

28

*Class Action Pocket Guide (3d ed.)*

decision about exercising any of their rights before being bound by the court's judgment.

A picture of asbestos insulation in a notice may trigger an association in the reader's mind. Those who recognize their own circumstances are likely to read on, contact a website, or call a toll-free telephone number. Nonmembers of the class will have a good reason for adding the notice to the junk mail pile.

A short-form, single-page (or shorter) "summary" notice with headlines can communicate all the required elements of Rule 23 and can tell the reader how to get additional information. Formal case captions should not be used in the summary notice as they are a turn-off to lay people. Legal terms of the settlement tend to confuse lay readers and should be confined to the settlement agreement posted at the website. While "legalese" has been reduced in recent years, much improvement is still needed. *See* Shannon R. Wheatman & Terri R. LeClerq, Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements (2010).

"Plain English" notices may not be enough. Truly global settlements will include class members whose native language is not English and who may not be citizens of an English-speaking country. Note that the FJC's illustrative class action notices on its website include an example of a Spanish language notice. For a recent and colorful example of a global format for class settlements, which is translated into numerous languages and complete with flags for each country, see the settlement administration website for *In re Royal Ahold Securities and Erisa Litigation,* http://www.aholdsettlement.com.

Make sure the notice plan takes into account any cultural and language barriers to notifying class members. For example, the class actions involving assets of Holocaust victims demanded a far-reaching notice campaign to notify the many dispersed Jewish survivors as well as gays, Jehovah's Witnesses, and Romani ("gypsy") migrants. The judge approved a "multifaceted plan" that included "worldwide publication, public relations (i.e., 'earned media'), Internet, and grass roots community outreach." *In re* Holocaust Victims Assets Litigation, 105 F. Supp. 2d 139, 144–45 (E.D.N.Y. 2000). As the judge in the Holocaust victims' class actions was,

29

*Class Action Pocket Guide (3d ed.)*

be alert to cultural differences that might affect the attention recipients will give to the proposed notices. A class of migrant farm workers, for example, might rely on radio more often than urban factory workers would. A class of people challenging searches and seizures as unreasonable might respond differently to official court notices than, say, people who have never been arrested.

## G. Claims processes and response handling

If the claims process deters class members from filing claims, the settlement may have less value to the class than the parties assert. Obtaining complete information about claims presented via an unimpeded process will assist you in determining the full value of the settlement and hence its reasonableness, fairness, and adequacy to the class. Avoid imposing unnecessary hurdles on potential claimants.

First, consider whether a claims process is necessary at all. The defendant may already have the data it needs to automatically pay the claims of at least a portion of class members who do not opt out. Necessary claim forms should be as simple and clear as possible and should avoid redundancy. Be careful to avoid claim forms that scare class members away with confusing questions and onerous proof requirements.

If you anticipate or find evidence of a low claims rate, ask counsel whether they have considered alternatives that might enhance the reach of the claims process and tailor it to the characteristics of class members, such as using surveys to determine reasons for nonresponses, improving the clarity of the claims forms, and adding outreach programs. *See* Francis E. McGovern, Distribution of Funds in Class Actions-Claims Administration, 35 J. Corp. L. 123 (2009).

Class counsel should be available to answer class members' questions. The parties commonly agree to seek the appointment of a qualified claims administrator to receive and process claims and handle a toll-free telephone number call center staffed by trained agents. In less complex matters, settlement administrators can place scripted answers to callers' frequently asked questions

*Class Action Pocket Guide (3d ed.)*

about the settlement on an automated phone system and on the Internet.

## H. Fairness hearing

### 1. Participation rates: opt-outs

The typical class action settlement notice will most likely yield an apathetic response, and few objectors or opt-outs. Two empirical studies found that about one in a thousand (0.1%) class members opted out of a proposed settlement. Theodore Eisenberg & Geoffrey P. Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 Vand. L. Rev. 1529 (2004); Thomas E. Willging et al., Federal Judicial Center, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (1996) [hereinafter Willging et al., Empirical Study of Class Actions (1996)].

Counsel may argue that a low percentage of opt-outs demonstrates class members' agreement with the settlement, but in some cases that argument seems misplaced. Opt-out rates vary according to the type of case and the amount of the individual recovery. Class members are considerably more likely to opt out of mass tort, employment, and commercial litigation, where individual recoveries are generally higher, and less likely to opt out of consumer cases, where individual recoveries are generally lower and individual litigation less viable.

### 2. Participation rates: objections

Do not expect class representatives or other class members to attend the fairness hearing or file written objections. A 1996 FJC study found that only about a quarter to a half of the class representatives attended the fairness hearing. Willging et al., Empirical Study of Class Actions (1996).

The FJC study also found that in about half of the class actions, not a single member filed a written objection. Written objections documented in the FJC study most frequently challenged the amount of the attorney fees requested. In second place was a related objection: that the settlement was inadequate to compensate class members for their losses, perhaps because the lawyers

31

*Class Action Pocket Guide (3d ed.)*

received more than their fair share. Next in line was the objection that the settlement favored some subclasses over others. These findings suggest that a substantial portion of the fairness hearing will focus on attorney fee issues.

### 3. Conducting the fairness hearing

It is essential to conduct a hearing even if no one other than the attorneys for the settling parties participates, because the hearing is your primary opportunity to focus on the terms of the settlement. You alone are charged with deciding whether the settlement is fair to the class members, reasonable in relation to the merits of their claims, and adequate to redress any injuries suffered. Rule 23 and the MCL 4th call for the judge to conduct an independent analysis of the settlement terms. Review the list of "hot button indicators" discussed in section IV.C above and be prepared to ask counsel hard questions about the value of the settlement to the class. In addition, the MCL 4th contains a checklist of fifteen more routine factors that might inform your decision about whether the settlement is superior to continued litigation of the class claims. MCL 4th § 21.62. The manual also discusses benchmarks for applying the fifteen factors.

If objectors and unrepresented class members appear at the fairness hearing, it is important to permit them to fully voice their concerns. For class members who feel strongly enough about their injuries to appear, the fairness hearing is their "day in court." Judges in settlements involving tort claims, such as the Agent Orange litigation and the silicone gel breast implant litigation, have held multiple days of hearings to accommodate the interests of class members.

You will, of course, want to eliminate unnecessary repetition. Setting time limits is a must. Be sure to notify participants in advance about how much time they will have. Note that having a group of class members gives you a chance to ask questions of all present, akin to conducting a voir dire of a jury venire. Such a group examination may be an efficient mechanism for getting a clear sense of the similarities and differences among class members' claims.

*Class Action Pocket Guide (3d ed.)*

Finally, Rule 23 and good practice both require specific findings as to how the settlement meets or fails to meet the statutory requirements. In these times of heightened visibility of class action rulings, appellate review of settlements is not pro forma even when the court affirms the district court's findings and conclusions.

# V. Attorney Fee Issues

As discussed in part II above, Rule 23(g) requires you to appoint class counsel at an early stage of the litigation. When appointing counsel, consider entering an order with express provisions about the standards and procedures you expect to use in reviewing requests for attorney fees and costs. Rule 23(g)(1)(C). At the least, you should inform counsel about whether to keep time records to support using a lodestar cross-check, as discussed below. In addition, appointing counsel gives you a natural opportunity to discuss cost-saving measures, such as limiting travel expenses and discouraging the use of senior partners to do legal research. *See* MCL 4th § 14.21. Perhaps from the outset of the litigation, but at least at the fee determination stage, "the district judge must protect the class's interest by acting as a fiduciary for the class." *In re* Rite Aid Corp. Securities Litigation, 396 F.3d 294, 307 (3d Cir. 2005).

## A. Evaluating monetary and nonmonetary results achieved

The 2003 Committee Note to Rule 23(h) gives the following guidance for determining attorney fees based on the creation of a monetary fund for the common benefit of the class: the "fundamental focus is the result actually achieved for class members."

In cases involving monetary benefits, do not be misled by party valuations of the settlement that presume a 100% claims rate by class members. Insist on actual information on claims filed to determine the benefit to class members and use that information both to place a value on the settlement and to award attorney fees, as the district judge did in *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 50–53 (D. Me. 2005). That value—plus the value of any nonmonetary relief—serves as the starting point for applying the

*Class Action Pocket Guide (3d ed.)*

percentage-of-value method in determining appropriate attorney fees (discussed below).

Likewise, in cases in which the benefit to the class is nonmonetary (coupons, discounts, warrants, injunctions, and the like), determining the actual value to the class requires looking beyond the face value of nonmonetary or contingent benefits. Redemption data or other evidence of class use is essential. In some cases, particularly settlements involving injunctive or declaratory relief, you might use expert valuations based on reliable, objective standards. In other cases, perhaps a majority, the only reliable test of the benefit to the class will be evidence of class members' use or redemption of the coupons, warrants, or other nonmonetary scrip. *See* MCL 4th § 21.71; *see also* Class Action Fairness Act, 28 U.S.C. § 1712(a) (2008) (coupon settlements). In such cases, it is especially important to link the amount of any attorney fees with the actual benefit to the class.

A direct way to ensure that you have sufficient information to determine attorney fees in cases with nonmonetary benefits is simply to hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use. For example, the court expressly reserved the determination of any attorney fees to be paid to plaintiffs' counsel until after the parties had provided the court with information concerning the distribution of benefits in *Strong v. BellSouth Telecommunications, Inc.*, 173 F.R.D. 167 (W.D. La. 1997), *aff'd,* 137 F.3d 844, 848 (5th Cir. 1998). Note that redemption of a coupon does not automatically mean the member received a benefit. If similar discounts are provided to consumers outside of the class, the benefit to the class might be less than the face amount of the coupon—or perhaps no benefit at all.

In some class actions involving injunctive relief, the injunctive relief can be assigned a monetary value on the basis of objective criteria. For example, an injunction against an overcharge may be valued at the amount of the overcharge multiplied by the number of people likely to be exposed to the overcharge in the near fu-

*Class Action Pocket Guide (3d ed.)*

ture. Or an injunction against a fraudulent sales practice might be valued by examining the amount of past sales attributable to the practice and projecting that value for a reasonable period of time, perhaps the life of the practice before the injunction. Other forms of injunctive relief, such as orders designed to end discrimination in public accommodations, may be more difficult to value. In such cases it may be necessary to calculate fees by using a lodestar approach.

The take-away line is this: Do not award fees until you know the true value of the settlement.

## B. Methods of calculating fees

Courts use two methods to calculate fees for cases in which the settlement is susceptible to an objective evaluation. The primary method is based on a percentage of the actual value to the class of any settlement fund plus the actual value of any nonmonetary relief. The second method is based on a lodestar calculation in which the court multiplies the reasonable number of attorney or paralegal hours actually expended by the hourly market rate for those services. For cases in which nonmonetary relief cannot be evaluated with confidence, the lodestar method may be the only reasonable alternative.

While most courts of appeals now permit district courts to use the percentage-of-value method (MCL 4th § 14.121), their decisions often direct district courts in their circuit to supplement the percentage method with a lodestar cross-check to see if the hourly rate is reasonable and to provide the appellate courts with a basis for reviewing the reasonableness of the fee award. The cross-check requires "neither mathematical precision nor bean-counting"; it allows you to "rely on summaries submitted by the attorneys and [you] need not review actual billing records." *In re* Rite Aid Corp. Securities Litigation, 396 F.3d 294, 306–07 (3d Cir. 2005).

Another type of cross-check involves examining the defendants' attorney fee records as a measure of what might be a reasonable number of hours or a total payment. In general, judges should avoid rigid adherence to a benchmark percentage and instead tailor their fee award to the realities of the class litigation before

35

*Class Action Pocket Guide (3d ed.)*

them. Sometimes huge settlements do not warrant a standard percentage, as the next section discusses.

## C. "Mega" cases

In "mega" cases, be prepared to see attorney requests for truly huge amounts, up to hundreds of millions of dollars. In such cases, of course, the monetary recovery to the class typically is also in the hundreds of millions of dollars, even in the billions. *See, e.g., In re* Prudential Insurance Co. of America Sales Practices Litigation, 148 F.3d 283, 339–40 (3d Cir. 1998). In such cases, you should be looking at a percentage of recovery far less than the typical range and perhaps as low as 4%. MCL 4th § 14.121. Generally, as the total recovery increases the percentage allocated to fees should decrease. Consider using a sliding scale to advance the goal of awarding reasonable fees in relation to the hours expended. MCL 4th § 14.121, text at nn.497–99; *see also In re* Rite Aid Corp., 396 F.3d at 302–03 (discussing the pros and cons of sliding scales). As noted above in part II, asking attorneys at the outset of the litigation to maintain time records will be helpful in implementing a lodestar cross-check for cases of this magnitude.

## D. Objectors

Objectors may qualify for fees because of their contribution to the common fund available to the class. As occurred in *Bowling v. Pfizer,* 922 F. Supp. 1261, 1285 (S.D. Ohio 1996), by reducing attorney fees, objectors often increase funds available for the common settlement fund. The 2003 Committee Note to Rule 23(h) expressly recognizes the benefits that objectors may provide to the class. But be wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings.

## E. Role of government actors

Often in consumer or commercial class action litigation, government regulators, such as the FTC, the Securities and Exchange Commission (SEC), or a state or the federal Attorney General's office, will lay the groundwork for class action litigation. In pursuing

*Class Action Pocket Guide (3d ed.)*

public goals of advancing fair competition, protecting consumers, and policing the marketplace against false and misleading information, such agencies may invest substantial resources in investigating a defendant's alleged malfeasance. For example, in *In re First Databank Antitrust Litigation,* 209 F. Supp. 2d 96, 97 (D.D.C. 2002), the FTC "expended over 25,000 hours of investigators' time, obtained production of and reviewed some 400 boxes of documents produced in response to approximately 40 subpoenas, and conducted 20 investigational hearings and over 60 interviews."

In quantifying the risk undertaken by plaintiffs' counsel in bringing a class action, scrutinize the activities of government actors that may have facilitated or enhanced the outcome (see section IV.B.4 above). Where a government body has obtained a guilty plea, criminal conviction, or civil judgment against a defendant, class counsel in a "piggyback" class action arising out of the same set of facts face a reduced risk of loss and a reduced burden of discovery and trial. A reasonable attorney fee in such cases may be a percentage of the value that the class counsel adds to the settlement that would not have been available to the class but for the counsel's work, as happened in *Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1272 (D.C. Cir. 1993). Likewise, in *In re First Databank,* 209 F. Supp. 2d at 98, the court limited the private plaintiff attorneys' fee to a percentage of the value the attorneys added to the FTC's proposed settlement.

In some cases, such as *In re First Databank,* the government actor might participate as an intervenor or as a friend of the court in addressing the attorney fee issues. If the agency does not intervene on its own initiative, consider inviting it to participate in the fee proceedings as an intervenor or friend of the court.

On the other hand, private class action litigation may pave the way for government enforcement or serve as a substantial deterrent in its own right. In such cases, take into account in awarding attorney fees any groundbreaking work of plaintiffs' counsel.

*Class Action Pocket Guide (3d ed.)*

# VI. Coordination with State Judges

Most class actions of any size and scope will have federal jurisdiction based on minimal diversity and, if originally filed in state court, will most likely be removed to federal court. Coordination among federal courts will often, but not always, proceed through the MDL process, at least for major cases. Some overlapping class actions may be filed in state courts (for example, in cases filed on behalf of a class of primarily in-state plaintiffs against an in-state defendant), but federal courts lack jurisdiction only in cases in which a primary or significant defendant is a citizen of the forum state. The first step in determining jurisdiction is to ask the parties whether competing or overlapping proposed or certified class actions exist in other courts. A defendant should be aware of any other litigation against it and should inform the court about competing or overlapping state class actions.

Judges have developed various practices, with various levels of formality, for coordinating their efforts with their state judge counterparts. Informal practices include personal meetings, telephone calls, and e-mail communications to exchange information about scheduling and to coordinate discovery, rulings on class certification, and other procedural matters. In more formal contexts, judges may share a special master with state judges, sit jointly and hear evidence and argument on motions, or even hold a national conference or a set of meetings about the litigation.

Generally, state judges have responded to requests for coordination in a spirit of cooperation. The key is to identify the cases and judges and initiate communication. Coordination in areas like discovery should take into account the pressure a state judge might experience from state lawyers eager to present their cases at trial or, at a minimum, to share in any common fund that their efforts help create. Only in the rarest instance will you ever need to issue an injunction to protect federal jurisdiction, usually when you are seeking to insulate a national settlement from contrary rulings in competing or overlapping class actions in state court. *See* MCL 4th §§ 21.42 and 20.32.

*Class Action Pocket Guide (3d ed.)*

# VII. Use of Special Masters and Court-Appointed Experts

Special masters, court-appointed experts, and other judicial adjuncts with special expertise may be useful in a variety of contexts in class action litigation. Specifically, judges have appointed special masters to oversee discovery and resolve disputes in cases in which the number and complexity of documents might generate a large number of disputes. *See* MCL 4th § 11.424. The emergence of electronic discovery and of a new industry of party experts on electronic discovery may increase the need for the court to appoint a discovery master. Judges have also used magistrate judges, special masters, court-appointed experts, technical advisors, and other adjuncts to assist them in evaluating class settlements (*see* MCL 4th § 21.644) and have appointed special masters or other adjuncts to administer settlements and participate in resolving claims via alternative dispute resolution (ADR) or other methods (*see* MCL 4th § 21.661).

Occasionally, judges have appointed special masters to devise trial plans. *See* MCL 4th § 21.141. In class actions involving disputed scientific evidence, you may want to appoint an expert to present a perspective on disputed issues that is less adversarial than what the parties' experts present. *See, e.g.,* MCL 4th § 22.87. Federal Rules of Civil Procedure 23(h)(4) and 53(a)(1)(C) expressly authorize using special masters to review attorney fee requests. *See* MCL 4th § 21.727. In many class actions, however, the trial judge may find that the information learned by participating in pretrial matters, such as resolving discovery disputes, will greatly enhance the judge's ability to make an informed assessment of a class settlement.

## Conclusion

If this guide has served its purpose, it has helped you analyze and manage the major aspects of class action litigation. By anticipating and paying serious attention to reviewing settlements and requests for attorney fees, you should be able to fulfill your role as a fidu-

*Class Action Pocket Guide (3d ed.)*

ciary for a class whose counsel and representatives have decided to settle on a particular outcome.

# Bibliography

American Law Institute, Principles of Aggregate Litigation (2010)

California Superior Court, Guidelines for Motions for Preliminary and Final Approval of Class Settlement (Draft May 3, 2010)

Theodore Eisenberg & Geoffrey P. Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 Vand. L. Rev. 1529 (2004)

Federal Judicial Center, Manual for Complex Litigation, Fourth (MCL 4th) (2004)

Federal Trade Commission, Fulfilling the Original Vision: The FTC at 90 (April 2004), http://ftc.gov/os/2004/04/040402abafinal.pdf

Deborah Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain (RAND Corp. 2000)

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do You Really Want Me To Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 Geo. J. Legal Ethics 1359 (2005)

Alan Hirsch & Diane Sheehey, Federal Judicial Center, Awarding Attorneys' Fees and Managing Fee Litigation (2d ed. 2005)

Laural L. Hooper & Marie Leary, *Auctioning the Role of Class Counsel in Class Action Cases: A Descriptive Study,* 209 F.R.D. 519 (Federal Judicial Center 2001)

Emery G. Lee III & Thomas E. Willging, *The Impact of the Class Action Fairness Act on the Federal Courts: An Empirical Analysis of Filings and Removals,* 156 U. Pa. L. Rev. 1723 (2008)

Emery G. Lee III & Thomas E. Willging, Federal Judicial Center, Impact of the Class Action Fairness Act on the Federal Courts: Preliminary Findings from Phase Two's Pre-CAFA Sample of Diversity Class Actions (2008)

*Class Action Pocket Guide (3d ed.)*

Francis E. McGovern, Distribution of Funds in Class Actions-Claims Administration, 35 J. Corp. L. 123 (2009)

Nicholas M. Pace & William B. Rubenstein, How Transparent Are Case Outcomes: Empirical Research on the Availability of Class Action Claims Data (RAND Corp. 2008)

Barbara J. Rothstein, John Beisner, Elizabeth J. Cabraser & Jay Tidmarsh, *The Class Action Fairness Act of 2005: An Overview of Legal and Case Management Issues* (Federal Judicial Center Broadcast, Apr. 1, 2005) (outline and videotape available from the FJC's Information Services Office)

Rust Consulting, Inc. & Kinsella Media, LLC, Plain Language Primer for Class Action Notice (undated), http://www.kinsella media.com/Knowledge_Sharing.aspx

Rust Consulting, Inc., Class Action Settlements: What You Should Know About Claim Filing Services (undated), http://www.rust consulting.com/pdfs/ClaimFilingServices.pdf

William W Schwarzer, Nancy E. Weiss & Alan Hirsch, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts,* 78 Va. L. Rev. 1689 (1992)

Symposium, *Fairness to Whom? Perspectives on the Class Action Fairness Act of 2005,* 156 U. Pa. L. Rev. 1439 (2008)

Third Circuit Task Force, *Report on Selection of Class Counsel,* 74 Temp. L. Rev. 689 (2001)

Sarah S. Vance, *A Primer on the Class Action Fairness Act of 2005,* 80 Tul. L. Rev. 1617 (2006)

Shannon R. Wheatman & Terri R. LeClercq, Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements (2010) (unpublished manuscript on file with the Federal Judicial Center)

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, Federal Judicial Center, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (1996); *see also* Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *An Empirical Analysis of Rule 23 to*

*Class Action Pocket Guide (3d ed.)*

*Address the Rulemaking Challenges,* 71 N.Y.U. L. Rev. 74 (1996) (later version of same report with fewer tables and figures)

Thomas E. Willging & Shannon R. Wheatman, Federal Judicial Center, An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation (2005)

# Case Annotations by Topic

## *Determining federal jurisdiction*

Tam v. Indymac Bank, No. 2:8CV06458, 2008 WL 4793676 (C.D. Cal. Oct. 30, 2008) (comprehensive show cause order with a checklist of jurisdictional and removal issues)

## Burdens of proof

Blockbuster v. Galeno, 472 F.3d 53, 56–58 (2d Cir. 2006) (CAFA did not alter long-standing burden-of-proof rule)

Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 813 (5th Cir. 2007) ("'once federal jurisdiction has been established [under CAFA] the *objecting* party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B) [the local controversy and home state exceptions]'") (quoting Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007) (alterations in original))

Spivey v. Vertrue, Inc., 528 F.3d 982, 985–86 (7th Cir. 2008) (defendant satisfied its burden of proof by showing more than $5 million was at stake, or "in controversy")

## Amount in controversy

Brill v. Countrywide Home Loans, 427 F.3d 446, 448 (7th Cir. 2005) ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction.")

Gene & Gene LLC v. Biopay LLC, 541 F.3d 318, 324 (5th Cir. 2008) ("Gene's complaint held open the possibility of treble damages, depending on the state of the proof.")

Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675, 682 (7th Cir. 2006) (party challenging federal jurisdiction must provide competent proof of the facts supporting the challenge)

Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 999–1000 (9th Cir. 2007) (plaintiff is the master of its complaint, and courts must accept damages allegations unless defendant can show a legal certainty of greater damages)

Home-state exception

Martin v. Lafon Nursing Facility of the Holy Family, Inc., 548 F. Supp. 2d 268, 273–78 (E.D. La. 2008) (discussing use of a questionnaire to establish residence and intent)

Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 813–18 (5th Cir. 2007) (discussing affidavits and evidence submitted to support proof of citizenship of class members in applying discretionary exception to CAFA)

Summerhill v. Terminix, No. 4:08CV659, 2008 WL 4809448 (E.D. Ark. Oct. 30, 2008) (applying statutory requirement that all primary defendants must be citizens of the home state for the exception to apply)

Discretionary jurisdiction

Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 822–24 (5th Cir. 2007) (class action involving Hurricane Katrina-related injuries did not affect national interests under CAFA)

## Timing and significance of class certification

Class certification

General Telephone Co. v. Falcon, 457 U.S. 147, 161 (1982) ("[A] class action may only be certified if the trial judge is satisfied, after a vigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.")

Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 594 (9th Cir. 2010) ("[D]istrict courts are not only at liberty to but must perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often . . . require

*Class Action Pocket Guide (3d ed.)*

looking behind the pleadings to issues overlapping with the merits of the underlying claims.")

Notice

> *In re* Vivendi Universal, S.A. Securities Litigation, 242 F.R.D. 76, 107–09 (2007)
>
> Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 176 (1974)

## Settlement review: risks and issues

Judge's role

> Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 280 (7th Cir. 2002)

Prior action by government entities

> *In re* First Databank Antitrust Litig., 209 F. Supp. 2d 96 (D.D.C. 2002)

Appraisal of settlement

> Acosta v. Trans Union, LLC, 243 F.R.D. 377, 391 (C.D. Cal. 2007) (reducing the number of claims rendered a portion of the settlement "illusory")
>
> Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 574–75 (E.D. Pa. 2001) (settlement appraisal focused on the value actually distributed to the class based on the number of claims actually filed)

Information from objectors

> O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 295 (E.D. Pa. 2003) (referring to "'canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests'" (quoting Shaw v. Toshiba Am. Info. Sys., 91 F. Supp. 2d 942, 973 (S.D. Tex. 2000))

*Class Action Pocket Guide (3d ed.)*

### Hot button indicators

Coupons

> *In re* Compact Disc Minimum Advertised Price Antitrust Litig.,
> 292 F. Supp. 2d 184, 186–88 (D. Me. 2003) (comparing settle-
> ment discounts with discounts available to frugal shoppers)
>
> *In re* General Motors Corp. Pick-Up Truck Fuel Tank Prods.
> Liab. Litig., 55 F.3d 768, 809–10 (3d Cir. 1995) (rejecting
> coupon settlement based in part on absence of a secondary
> market in which coupons could be converted to cash)
>
> *In re* Mexico Money Transfer Litig., 267 F.3d 743, 748 (7th Cir.
> 2001) (coupons may be of value to repeat users of a product
> or service)

Negative options

> Chavez v. Netflix, Inc., 75 Cal. Rptr. 3d 413, 418–21 (Cal. Ct.
> App. 2008) (tying together a proposed "benefit" with an au-
> tomatic paid renewal of that "benefit" is grounds for rejec-
> tion of a proposed settlement)

*Cy pres* relief ("fluid recovery")

> Molski v. Gleich, 318 F.3d 937, 954 (9th Cir. 2003) (rejecting
> proposed *cy pres* award after examining proposed settlement
> for evidence that "proof of individual claims would be bur-
> densome or that distribution of damages would be costly")
>
> Powell v. Georgia-Pac. Corp., 119 F.3d 703 (8th Cir. 1997) (ex-
> amining the relationship between the class members' inter-
> ests and those of the proposed *cy pres* recipient)

Restriction on claims/reversion of unclaimed funds to
defendants

> Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 283 (7th Cir.
> 2002) (restrictions on eligibility may diminish the value of
> the settlement to the class)

Collusion: "Reverse auctions" and the like

> Acosta v. Trans Union, LLC, 243 F.R.D. 377, 399 (C.D. Cal.
> 2007) ("The Court is hesitant to classify the Settlement as
> the product of a 'reverse auction,' but cannot avoid the con-

*Class Action Pocket Guide (3d ed.)*

clusion that the process by which it was reached is strikingly similar.")

Figueroa v. Sharper Image Corp., 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (class settlement rejected where defendants selected the most vulnerable plaintiff attorney and convinced that attorney to accept terms unfavorable to the class)

Injunctive relief

Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 615–23 (9th Cir. 2010) (discussing injunctive relief)

Release of liability without remedy

Reynolds v. Beneficial Nat'l Bank, 288 F.3d 277, 283–84 (7th Cir. 2002) (releasing a damage remedy without payment to class members is not acceptable)

Settlement class actions

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (Rule 23 standards, with the exception of manageability, apply to certification of settlement class actions)

## Preliminary review of proposed settlement

*In re* Lupron Mktg. & Sales Practices Litig., 345 F. Supp. 2d 135, 138 n.5 (D. Mass. 2004) (permitting plaintiff counsel in independent state class actions against same defendants to intervene and provide adversarial opposition to a proposed settlement)

Notice to the Class

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974)

Mullane v. Central Hanover Bank and Trust Co. 339 U.S. 306 (1950)

Jones v. Flowers, 547 U.S. 220 (2006)

*In re* Holocaust Victims Assets Litig., 105 F. Supp. 2d 139, 144–45 (E.D.N.Y. 2000) (describing multifaceted notice plan)

*Class Action Pocket Guide (3d ed.)*

### Conducting the fairness hearing

*In re* Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001) (appellate review of class settlement)

### Attorney fee issues

*In re* Rite Aid Corp. Sec. Litig., 396 F.3d 294, 307 (3d Cir. 2005) (stating that "the district judge must protect the class's interest by acting as a fiduciary for the class")

Evaluating monetary and nonmonetary results achieved

Bowling v. Pfizer, 132 F.3d 1147, 1151–52 (6th Cir. 1998) (reserving a portion of attorney fee decision until administration of the class settlement is complete)

Fleury v. Richemont N. Am., Inc., No. 05-4525, 2008 WL 3287154, at *6 (N.D. Cal. Aug. 6, 2008) (reserving attorney fee decision)

*In re* Auction Houses Antitrust Litig., No. 00-Civ.-0648, 2001 WL 170792, at *3–*5, *15–17 (S.D.N.Y. 2001) (awarding fees in part in the form of warrants)

Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561 (E.D. Pa. 2001) (value distributed to the class based on the number of claims actually filed represents the starting point for calculation of attorney fee award)

Strong v. BellSouth Telecomm., Inc., 173 F.R.D. 167 (W.D. La. 1997), *aff'd,* 137 F.3d 844, 848 (5th Cir. 1998) (reserving attorney fee decision until court receives information about actual distribution of settlement benefits to class members)

Sylvester v. CIGNA Corp., 369 F. Supp. 2d 34, 50–53 (D. Me. 2005) (using information about actual claims by class members to evaluate settlement and award attorney fees)

Methods of calculating fees

*In re* Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306–07 (3d Cir. 2005) (lodestar cross-check does not require actual billing records)

*Class Action Pocket Guide (3d ed.)*

"Mega" cases

> *In re* Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 339–40 (3d Cir. 1998) (describing large class settlements)

> *In re* Rite Aid Corp. Sec. Litig., 396 F.3d 294, 302–03 (3d Cir. 2005) (discussing pros and cons of sliding scales for fee awards)

Objectors

> Bowling v. Pfizer, 922 F. Supp. 1261, 1285 (S.D. Ohio 1996) (objectors to fees were awarded fees for adding to the common fund)

Role of government actors

> *In re* First Databank Antitrust Litig., 209 F. Supp. 2d 96, 97–98 (D.D.C. 2002) (documenting time and effort of government agency; participation in class litigation by government agency)

> Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (reasonable attorney fee is a percentage of the value added to the class settlement beyond the amount attributable to the government agency)

**The Federal Judicial Center**

**Board**
The Chief Justice of the United States, Chair
Judge Susan H. Black, U.S. Court of Appeals for the Eleventh Circuit
Judge David O. Carter, U.S. District Court for the Central District of California
Magistrate Judge John Michael Facciola, U.S. District Court for the District of
    Columbia
Judge James B. Haines, Jr., U.S. Bankruptcy Court for the District of Maine
Judge Edward C. Prado, U.S. Court of Appeals for the Fifth Circuit
Judge Loretta A. Preska, U.S. District Court for the Southern District of New York
Judge Philip M. Pro, U.S. District Court for the District of Nevada
James C. Duff, Director of the Administrative Office of the U.S. Courts

**Director**
Judge Barbara J. Rothstein

**Deputy Director**
John S. Cooke

**About the Federal Judicial Center**

The Federal Judicial Center is the research and education agency of the federal judicial system. It was established by Congress in 1967 (28 U.S.C. §§ 620–629), on the recommendation of the Judicial Conference of the United States.

By statute, the Chief Justice of the United States chairs the Center's Board, which also includes the director of the Administrative Office of the U.S. Courts and seven judges elected by the Judicial Conference.

The organization of the Center reflects its primary statutory mandates. The Education Division plans and produces education and training programs for judges and court staff, including satellite broadcasts, video programs, publications, curriculum packages for in-court training, and Web-based programs and resources. The Research Division examines and evaluates current and alternative federal court practices and policies. This research assists Judicial Conference committees, who request most Center research, in developing policy recommendations. The Center's research also contributes substantially to its educational programs. The two divisions work closely with two units of the Director's Office—the Systems Innovations & Development Office and Communications Policy & Design Office—in using print, broadcast, and online media to deliver education and training and to disseminate the results of Center research. The Federal Judicial History Office helps courts and others study and preserve federal judicial history. The International Judicial Relations Office provides information to judicial and legal officials from foreign countries and assesses how to inform federal judicial personnel of developments in international law and other court systems that may affect their work.

**EXHIBIT B**

**Notes of Advisory Committee on 2003 amendments.** *Note to Subdivision (c).* Subdivision (c) is amended in several respects. The requirement that the court determine whether to certify a class "as soon as practicable after commencement of an action" is replaced by requiring determination "at an early practicable time." The notice provisions are substantially revised.

Paragraph (1). Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made "at an early practicable time." The "as soon as practicable" exaction neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision. See Willging, Hooper & Niemic, Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules 26-36 (Federal Judicial Center 1996).

Time may be needed to gather information necessary to make the certification decision. Although an evaluation of the probable outcome on the merits is not properly part of the certification decision, discovery in aid of the certification decision often includes information required to identify the nature of the issues that actually will be presented at trial. In this sense it is appropriate to conduct controlled discovery into the "merits," limited to those aspects relevant to making the certification decision on an informed basis. Active judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between "certification discovery" and "merits discovery." A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof. See Manual For Complex Litigation Third, § 21.213, p. 44; § 30.11, p. 214; § 30.12, p. 215.

Other considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified. Time may be needed to explore designation of counsel under Rule 23(g), recognizing that in many cases the need to progress toward the certification determination may require designation of interim class counsel under Rule 23(g)(2)(A).

Although many circumstances may justify deferring the certification decision, active management may be necessary to ensure that the certification decision is not unjustifiably delayed.

Subdivision (c)(1)(C) reflects two amendments. The provision that a class certification "may be conditional" is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met. The provision that permits alteration or amendment of an order granting or denying class certification is amended to set the cut-off point at final judgment rather than "the decision on the merits." This change avoids the possible ambiguity in referring to "the decision on the merits." Following a determination of liability, for example, proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class. In this setting the final judgment concept is pragmatic. It is not the same as the concept used for appeal purposes, but it should be, particularly in protracted litigation.

The authority to amend an order under Rule 23(c)(1) before final judgment does not restore the practice of "one-way intervention" that was rejected by the 1966 revision of Rule 23. A determination of liability after certification, however, may show a need to amend the class definition. Decertification may be warranted after further proceedings.

If the definition of a class certified under Rule 23(b)(3) is altered to include members who have not

been afforded notice and an opportunity to request exclusion, notice -- including an opportunity to request exclusion -- must be directed to the new class members under Rule 23(c)(2)(B).

Paragraph (2). The first change made in Rule 23(c)(2) is to call attention to the court's authority -- already established in part by Rule 23(d)(2) -- to direct notice of certification to a Rule 23(b)(1) or (b)(2) class. The present rule expressly requires notice only in actions certified under Rule 23(b)(3). Members of classes certified under Rules 23(b)(1) or (b)(2) have interests that may deserve protection by notice.

The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.

When the court does direct certification notice in a (b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective. A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods.

If a Rule 23(b)(3) class is certified in conjunction with a (b)(2) class, the (c)(2)(B) notice requirements must be satisfied as to the (b)(3) class.

The direction that class-certification notice be couched in plain, easily understood language is a reminder of the need to work unremittingly at the difficult task of communicating with class members. It is difficult to provide information about most class actions that is both accurate and easily understood by class members who are not themselves lawyers. Factual uncertainty, legal complexity, and the complication of class-action procedure raise the barriers high. The Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms.

*Note to Subdivision (e).* Subdivision (e) is amended to strengthen the process of reviewing proposed class-action settlements. Settlement may be a desirable means of resolving a class action. But court review and approval are essential to assure adequate representation of class members who have not participated in shaping the settlement.

Paragraph (1). Subdivision (e)(1)(A) expressly recognizes the power of a class representative to settle class claims, issues, or defenses.

Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." That language could be -- and at times was -- read to require court approval of settlements with putative class representatives that resolved only individual claims. See Manual for Complex Litigation Third, § 30.41. The new rule requires approval only if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise.

Subdivision (e)(1)(B) carries forward the notice requirement of present Rule 23(e) when the settlement binds the class through claim or issue preclusion; notice is not required when the settlement binds only the individual class representatives. Notice of a settlement binding on the class is required either when the settlement follows class certification or when the decisions on certification and settlement proceed

simultaneously.

Reasonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class. Individual notice is appropriate, for example, if class members are required to take action -- such as filing claims -- to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3).

Subdivision (e)(1)(C) confirms and mandates the already common practice of holding hearings as part of the process of approving settlement, voluntary dismissal, or compromise that would bind members of a class.

Subdivision (e)(1)(C) states the standard for approving a proposed settlement that would bind class members. The settlement must be fair, reasonable, and adequate. A helpful review of many factors that may deserve consideration is provided by *In re: Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 148 F.3d 283, 316-324 (3d Cir. 1998).* Further guidance can be found in the Manual for Complex Litigation.

The court must make findings that support the conclusion that the settlement is fair, reasonable, and adequate. The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard.

Settlement review also may provide an occasion to review the cogency of the initial class definition. The terms of the settlement themselves, or objections, may reveal divergent interests of class members and demonstrate the need to redefine the class or to designate subclasses.

Redefinition of a class certified under Rule 23(b)(3) may require notice to new class members under Rule 23(c)(2)(B). See Rule 23(c)(1)(C).

Paragraph (2). Subdivision (e)(2) requires parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) to file a statement identifying any agreement made in connection with the settlement. This provision does not change the basic requirement that the parties disclose all terms of the settlement or compromise that the court must approve under Rule 23(e)(1). It aims instead at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others. Doubts should be resolved in favor of identification.

Further inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors. The court may direct the parties to provide to the court or other parties a summary or copy of the full terms of any agreement identified by the parties. The court also may direct the parties to provide a summary or copy of any agreement not identified by the parties that the court considers relevant to its review of a proposed settlement. In exercising discretion under this rule, the court may act in steps, calling first for a summary of any agreement that may have affected the settlement and then for a complete version if the summary does not provide an adequate basis for review. A direction to disclose a summary or copy of an agreement may raise concerns of confidentiality. Some agreements may include information that merits protection against general disclosure. And the court must provide an opportunity to claim work-product or other protections.

Paragraph (3). Subdivision (e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords class members a new opportunity to request exclusion from a class certified under Rule 23(b)(3) after settlement terms are known. An agreement by the parties themselves to permit class members to elect exclusion at this point by the settlement agreement may be one factor supporting

approval of the settlement. Often there is an opportunity to opt out at this point because the class is certified and settlement is reached in circumstances that lead to simultaneous notice of certification and notice of settlement. In these cases, the basic opportunity to elect exclusion applies without further complication. In some cases, particularly if settlement appears imminent at the time of certification, it may be possible to achieve equivalent protection by deferring notice and the opportunity to elect exclusion until actual settlement terms are known. This approach avoids the cost and potential confusion of providing two notices and makes the single notice more meaningful. But notice should not be delayed unduly after certification in the hope of settlement.

Rule 23 (e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision if the earlier opportunity to elect exclusion provided with the certification notice has expired by the time of the settlement notice. A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.

The opportunity to request exclusion from a proposed settlement is limited to members of a (b)(3) class. Exclusion may be requested only by individual class members; no class member may purport to opt out other class members by way of another class action.

The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion. The court may make this decision before directing notice to the class under Rule 23(e)(1)(B) or after the Rule 23(e)(1)(C) hearing. Many factors may influence the court's decision. Among these are changes in the information available to class members since expiration of the first opportunity to request exclusion, and the nature of the individual class members' claims.

The terms set for permitting a new opportunity to elect exclusion from the proposed settlement of a Rule 23(b)(3) class action may address concerns of potential misuse. The court might direct, for example, that class members who elect exclusion are bound by rulings on the merits made before the settlement was proposed for approval. Still other terms or conditions may be appropriate.

Paragraph (4). Subdivision (e)(4) confirms the right of class members to object to a proposed settlement, voluntary dismissal, or compromise. The right is defined in relation to a disposition that, because it would bind the class, requires court approval under subdivision (e)(1)(C).

Subdivision (e)(4)(B) requires court approval for withdrawal of objections made under subdivision (e)(4)(A). Review follows automatically if the objections are withdrawn on terms that lead to modification of the settlement with the class. Review also is required if the objector formally withdraws the objections. If the objector simply abandons pursuit of the objection, the court may inquire into the circumstances.

Approval under paragraph (4)(B) may be given or denied with little need for further inquiry if the objection and the disposition go only to a protest that the individual treatment afforded the objector under the proposed settlement is unfair because of factors that distinguish the objector from other class members. Different considerations may apply if the objector has protested that the proposed settlement is not fair, reasonable, or adequate on grounds that apply generally to a class or subclass. Such objections, which purport to represent class-wide interests, may augment the opportunity for obstruction or delay. If such objections are surrendered on terms that do not affect the class settlement or the objector's participation in the class settlement, the court often can approve withdrawal of the

objections without elaborate inquiry.

Once an objector appeals, control of the proceeding lies in the court of appeals. The court of appeals may undertake review and approval of a settlement with the objector, perhaps as part of appeal settlement procedures, or may remand to the district court to take advantage of the district court's familiarity with the action and settlement.

*Note to Subdivision (g).* Subdivision (g) is new. It responds to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action. Until now, courts have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4). This experience has recognized the importance of judicial evaluation of the proposed lawyer for the class, and this new subdivision builds on that experience rather than introducing an entirely new element into the class certification process. Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision will guide the court in assessing proposed class counsel as part of the certification decision. This subdivision recognizes the importance of class counsel, states the obligation to represent the interests of the class, and provides a framework for selection of class counsel. The procedure and standards for appointment vary depending on whether there are multiple applicants to be class counsel. The new subdivision also provides a method by which the court may make directions from the outset about the potential fee award to class counsel in the event the action is successful.

Paragraph (1) sets out the basic requirement that class counsel be appointed if a class is certified and articulates the obligation of class counsel to represent the interests of the class, as opposed to the potentially conflicting interests of individual class members. It also sets out the factors the court should consider in assessing proposed class counsel.

Paragraph (1)(A) requires that the court appoint class counsel to represent the class. Class counsel must be appointed for all classes, including each subclass that the court certifies to represent divergent interests.

Paragraph (1)(A) does not apply if "a statute provides otherwise." This recognizes that provisions of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) (codified in various sections of 15 U.S.C.), contain directives that bear on selection of a lead plaintiff and the retention of counsel. This subdivision does not purport to supersede or to affect the interpretation of those provisions, or any similar provisions of other legislation.

Paragraph 1(B) recognizes that the primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule thus establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients.

Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it. The class representatives do not have an unfettered right to "fire" class counsel.In the same vein, the class representatives cannot command class counsel to accept or reject a settlement proposal. To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interests of the class as a whole.

Paragraph (1)(C) articulates the basic responsibility of the court to appoint class counsel who will provide the adequate representation called for by paragraph (1)(B). It identifies criteria that must be considered and invites the court to consider any other pertinent matters. Although couched in terms of

the court's duty, the listing also informs counsel seeking appointment about the topics that should be addressed in an application for appointment or in the motion for class certification.

The court may direct potential class counsel to provide additional information about the topics mentioned in paragraph (1)(C) or about any other relevant topic. For example, the court may direct applicants to inform the court concerning any agreements about a prospective award of attorney fees or nontaxable costs, as such agreements may sometimes be significant in the selection of class counsel. The court might also direct that potential class counsel indicate how parallel litigation might be coordinated or consolidated with the action before the court.

The court may also direct counsel to propose terms for a potential award of attorney fees and nontaxable costs. Attorney fee awards are an important feature of class action practice, and attention to this subject from the outset may often be a productive technique. Paragraph (2)(C) therefore authorizes the court to provide directions about attorney fees and costs when appointing class counsel. Because there will be numerous class actions in which this information is not likely to be useful, the court need not consider it in all class actions.

Some information relevant to class counsel appointment may involve matters that include adversary preparation in a way that should be shielded from disclosure to other parties. An appropriate protective order may be necessary to preserve confidentiality.

In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case. For example, the resources counsel will commit to the case must be appropriate to its needs, but the court should be careful not to limit consideration to lawyers with the greatest resources.

If, after review of all applicants, the court concludes that none would be satisfactory class counsel, it may deny class certification, reject all applications, recommend that an application be modified, invite new applications, or make any other appropriate order regarding selection and appointment of class counsel.

Paragraph (2). This paragraph sets out the procedure that should be followed in appointing class counsel. Although it affords substantial flexibility, it provides the framework for appointment of class counsel in all class actions. For counsel who filed the action, the materials submitted in support of the motion for class certification may suffice to justify appointment so long as the information described in paragraph (g)(1)(C) is included. If there are other applicants, they ordinarily would file a formal application detailing their suitability for the position.

In a plaintiff class action the court usually would appoint as class counsel only an attorney or attorneys who have sought appointment. Different considerations may apply in defendant class actions.

The rule states that the court should appoint "class counsel." In many instances, the applicant will be an individual attorney. In other cases, however, an entire firm, or perhaps of numerous attorneys who are not otherwise affiliated but are collaborating on the action will apply. No rule of thumb exists to determine when such arrangements are appropriate; the court should be alert to the need for adequate staffing of the case, but also to the risk of overstaffing or an ungainly counsel structure.

Paragraph (2)(A) authorizes the court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class. Rule 23(c)(1)(B) directs that the order certifying the class include appointment of class counsel. Before class certification, however, it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to

Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. Settlement may be discussed before certification. Ordinarily, such work is handled by the lawyer who filed the action. In some cases, however, there may be rivalry or uncertainty that makes formal designation of interim counsel appropriate. Rule 23(g)(2)(A) authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made. Failure to make the formal designation does not prevent the attorney who filed the action from proceeding in it. Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole. For example, an attorney who negotiates a pre-certification settlement must seek a settlement that is fair, reasonable, and adequate for the class.

Rule 23(c)(1) provides that the court should decide whether to certify the class "at an early practicable time," and directs that class counsel should be appointed in the order certifying the class. In some cases, it may be appropriate for the court to allow a reasonable period after commencement of the action for filing applications to serve as class counsel. The primary ground for deferring appointment would be that there is reason to anticipate competing applications to serve as class counsel. Examples might include instances in which more than one class action has been filed, or in which other attorneys have filed individual actions on behalf of putative class members. The purpose of facilitating competing applications in such a case is to afford the best possible representation for the class. Another possible reason for deferring appointment would be that the initial applicant was found inadequate, but it seems appropriate to permit additional applications rather than deny class certification.

Paragraph (2)(B) states the basic standard the court should use in deciding whether to certify the class and appoint class counsel in the single applicant situation -- that the applicant be able to provide the representation called for by paragraph (1)(B) in light of the factors identified in paragraph (1)(C).

If there are multiple adequate applicants, paragraph (2)(B) directs the court to select the class counsel best able to represent the interests of the class. This decision should also be made using the factors outlined in paragraph (1)(C), but in the multiple applicant situation the court is to go beyond scrutinizing the adequacy of counsel and make a comparison of the strengths of the various applicants. As with the decision whether to appoint the sole applicant for the position, no single factor should be dispositive in selecting class counsel in cases in which there are multiple applicants. The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if that lawyer had not done significant work identifying or investigating claims. Depending on the nature of the case, one important consideration might be the applicant's existing attorney-client relationship with the proposed class representative.

Paragraph (2)(C) builds on the appointment process by authorizing the court to include provisions regarding attorney fees in the order appointing class counsel. Courts may find it desirable to adopt guidelines for fees or nontaxable costs, or to direct class counsel to report to the court at regular intervals on the efforts undertaken in the action, to facilitate the court's later determination of a reasonable attorney fee.

*Note to Subdivision (h).* Subdivision (h) is new. Fee awards are a powerful influence on the way attorneys initiate, develop, and conclude class actions. Class action attorney fee awards have heretofore been handled, along with all other attorney fee awards, under Rule 54(d)(2), but that rule is not addressed to the particular concerns of class actions. This subdivision is designed to work in tandem

with new subdivision (g) on appointment of class counsel, which may afford an opportunity for the court to provide an early framework for an eventual fee award, or for monitoring the work of class counsel during the pendency of the action.

Subdivision (h) applies to "an action certified as a class action." This includes cases in which there is a simultaneous proposal for class certification and settlement even though technically the class may not be certified unless the court approves the settlement pursuant to review under Rule 23(e). When a settlement is proposed for Rule 23(e) approval, either after certification or with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself.

This subdivision does not undertake to create new grounds for an award of attorney fees or nontaxable costs. Instead, it applies when such awards are authorized by law or by agreement of the parties. Against that background, it provides a format for all awards of attorney fees and nontaxable costs in connection with a class action, not only the award to class counsel. In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist.

This subdivision authorizes an award of "reasonable" attorney fees and nontaxable costs. This is the customary term for measurement of fee awards in cases in which counsel may obtain an award of fees under the "common fund" theory that applies in many class actions, and is used in many fee-shifting statutes. Depending on the circumstances, courts have approached the determination of what is reasonable in different ways. In particular, there is some variation among courts about whether in "common fund" cases the court should use the lodestar or a percentage method of determining what fee is reasonable. The rule does not attempt to resolve the question whether the lodestar or percentage approach should be viewed as preferable.

Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on caselaw development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.

Courts discharging this responsibility have looked to a variety of factors. One fundamental focus is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members. The Private Securities Litigation Reform Act of 1995 explicitly makes this factor a cap for a fee award in actions to which it applies. See 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). For a percentage approach to fee measurement, results achieved is the basic starting point.

In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer

some portion of the fee award until actual payouts to class members are known. Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class. On occasion the court's Rule 23(e) review will provide a solid basis for this sort of evaluation, but in any event it is also important to assessing the fee award for the class.

At the same time, it is important to recognize that in some class actions the monetary relief obtained is not the sole determinant of an appropriate attorney fees award. Cf. Blanchard v. Bergeron, 489 U.S. 87, 95 [103 L. Ed. 2d 67, 76] (1989) (cautioning in an individual case against an "undesirable emphasis" on "the importance of the recovery of damages in civil rights litigation" that might "shortchange efforts to seek effective injunctive or declaratory relief").

Any directions or orders made by the court in connection with appointing class counsel under Rule 23(g) should weigh heavily in making a fee award under this subdivision.

Courts have also given weight to agreements among the parties regarding the fee motion, and to agreements between class counsel and others about the fees claimed by the motion. Rule 54(d)(2)(B) provides: "If directed by the court, the motion shall also disclose the terms of any agreement with respect to fees to be paid for the services for which claim is made." The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration, but the court remains responsible to determine a reasonable fee. "Side agreements" regarding fees provide at least perspective pertinent to an appropriate fee award.

In addition, courts may take account of the fees charged by class counsel or other attorneys for representing individual claimants or objectors in the case. In determining a fee for class counsel, the court's objective is to ensure an overall fee that is fair for counsel and equitable within the class. In some circumstances individual fee agreements between class counsel and class members might have provisions inconsistent with those goals, and the court might determine that adjustments in the class fee award were necessary as a result.

Finally, it is important to scrutinize separately the application for an award covering nontaxable costs. If costs were addressed in the order appointing class counsel, those directives should be a presumptive starting point in determining what is an appropriate award.

Paragraph (1). Any claim for an award of attorney fees must be sought by motion under Rule 54(d)(2), which invokes the provisions for timing of appeal in Rule 58 and Appellate Rule 4. Owing to the distinctive features of class action fee motions, however, the provisions of this subdivision control disposition of fee motions in class actions, while Rule 54(d)(2) applies to matters not addressed in this subdivision.

The court should direct when the fee motion must be filed. For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e). In cases litigated to judgment, the court might also order class counsel's motion to be filed promptly so that notice to the class under this subdivision (h) can be given.

Besides service of the motion on all parties, notice of class counsel's motion for attorney fees must be "directed to the class in a reasonable manner." Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances. In cases in which settlement approval is

contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e). In adjudicated class actions, the court may calibrate the notice to avoid undue expense.

Paragraph (2). A class member and any party from whom payment is sought may object to the fee motion. Other parties -- for example, nonsettling defendants -- may not object because they lack a sufficient interest in the amount the court awards. The rule does not specify a time limit for making an objection. In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.

The court may allow an objector discovery relevant to the objections. In determining whether to allow discovery, the court should weigh the need for the information against the cost and delay that would attend discovery. See Rule 26(b)(2). One factor in determining whether to authorize discovery is the completeness of the material submitted in support of the fee motion, which depends in part on the fee measurement standard applicable to the case. If the motion provides thorough information, the burden should be on the objector to justify discovery to obtain further information.

Paragraph (3). Whether or not there are formal objections, the court must determine whether a fee award is justified and, if so, set a reasonable fee. The rule does not require a formal hearing in all cases. The form and extent of a hearing depend on the circumstances of the case. The rule does require findings and conclusions under Rule 52(a).

Paragraph (4). By incorporating Rule 54(d)(2), this provision gives the court broad authority to obtain assistance in determining the appropriate amount to award. In deciding whether to direct submission of such questions to a special master or magistrate judge, the court should give appropriate consideration to the cost and delay that such a process might entail.