Kevin R. Sutherland (State Bar No. 163746)
Natasha N. Mikha (State Bar No. 270731)
CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone:   (213) 358-7600
Facsimile:    (213) 358-7699
Email:        kevin.sutherland@clydeco.us
              natasha.mikha@clydeco.us

Jeffrey J. Ellis (admitted *pro hac vice*)
CLYDE & CO US LLP
405 Lexington Avenue, 16th Floor
New York, New York 10174
Telephone:   (212) 710-3900
Facsimile:    (212) 710-3950
Email:        jeff.ellis@clydeco.us

Attorneys for Defendant
FRONTIER AIRLINES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA RIDGELL, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC. a Colorado corporation; AIRBUS S.A.S., a foreign corporation doing business in the State of California; AIRBUS GROUP HQ, INC., a corporation doing business in the State of California,<br><br>Defendants. | Case No.: 2:18-CV-04916 PA (AFMx)<br><br>FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>Date:  June 17, 2019<br>Time:  1:30 p.m.<br>Place:  Courtroom of the Honorable Percy Anderson |

Frontier Airlines, Inc. (hereinafter "Frontier "), by and through its counsel of record, Clyde & Co US LLP, hereby submits its memorandum of points and authorities in support of its motion for summary judgment as follows:

/ /

6036597

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

Page

INTRODUCTION ............................................................................................1

STATEMENT OF FACTS .............................................................................3

RULE 56 STANDARD ...................................................................................7

ARGUMENT ...................................................................................................8

I.    FRONTIER CANNOT BE HELD LIABLE FOR OPERATING AN AIRCRAFT THAT THE FAA HAS CERTIFIED AS AIRWORTHY OR FOR NOT WARNING ABOUT A CONDITION WHICH THE FAA HAS NOT DEEMED TO BE UNSAFE ........................................8

      A.    US Courts Have Consistently Held that Federal Law Governs Aviation Safety .........................................................8

      B.    The FAA Has Rejected State Attempts to Regulate Aviation Safety and the FAA and EASA Have Deemed Bleed Air Systems to be Safe ...................................................11

II    IN ADDITION TO THE PERVASIVE REGULATION TEST FOR APPLYING FEDERAL STANDARDS, THE NINTH CIRCUIT HAS ALSO APPLIED THE NATURE OF THE SUBJECT MATTER TEST TO HOLD THAT FEDERAL STANDARDS EXCLUSIVELY GOVERN LIABILITY, WHILE THE AIRLINE DEREGULATION ACT OF 1978 HAS BEEN HELD TO PRECLUDE THE USE OF STATE LAW RELATED TO AIRLINE ROUTES, SERVICES AND PRICE .................................................................................................14

      A.    The Nature of the Subject Matter Precludes State Regulation ..........14

      B.    The Airline Deregulation Act Precludes State Regulation ................17

III   EVEN IF PLAINTIFF'S CLAIMS WERE NOT EXCLUSIVELY GOVERNED BY FEDERAL LAW, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF CANNOT ESTABLISH ANY OF HER CAUSES OF ACTION AGAINST FRONTIER AS A MATTER OF LAW ....................18

      A.    Plaintiff Cannot Establish a Strict Products Liability Cause of Action Against Frontier Because Frontier Does Not Manufacture, Distribute or Sell Aircraft .............................18

      B.    Plaintiff Cannot Establish a Breach of Warranties Cause of Action Against Frontier Because Frontier Does Not Manufacture, Distribute or Sell Aircraft .............................18

      C.    Plaintiff Cannot Establish a Negligence Cause of Action Against Frontier Because Frontier Maintains and Inspects its Aircraft in Accordance with FAA Regulations ...............19

# TABLE OF CONTENTS

D.      Plaintiff Cannot Establish a Negligent Infliction of Emotional Distress Cause of Action Against Frontier Because Frontier Was Not Negligent and Did Not Engage in Intentional or Reckless Conduct...................................................................................20

E.      Plaintiff Cannot Establish a False Imprisonment Cause of Action Against Frontier Because Plaintiff Was Not Restricted in Her Freedom of Movement and/or Plaintiff Consented to Remain in the Gate Area ........................................................................................21

CONCLUSION.........................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abdullah v. American Airlines, Inc.,*
181 F.3d 363 (3d Cir. 1999) ............................................................................... 14

*Air Evac EMS, Inc. v. Robinson,*
486 F. Supp. 2d 713 (M.D. Tenn. 2007) ............................................................ 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 27

*Bieneman v. City of Chicago,*
864 F.2d 463 (7th Cir. 1988) .............................................................................. 17

*Bunn v. Khoury Enterprises, Inc.,*
753 F.3d 676 (7th Cir. 2014) .............................................................................. 13

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ...................................... 13

*Chicago & S. Air Lines v. Waterman S. S. Corp.,*
333 U.S. 103 (1948) ............................................................................................ 22

*City of Burbank v. Lockheed Air Terminal Inc.,*
411 U.S. 624 (1973) .................................................................................. 14, 18, 22

*Cooley v. Board of Wardens,*
53 U.S. 299 (1851) ........................................................................................ 21, 22

*Fermino v. Fedco, Inc.,*
7 Cal.4th 701, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994) ..................................... 27

*Fogo v. Cutter Laboratories, Inc.,*
68 Cal.App.3d 744, 137 Cal.Rptr. 417 (1977) .................................................... 24

*Gibbons v. Ogden,*
22 U.S. 1 (1824) .................................................................................................. 21

*Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.,*
555 F.3d 806 (9th Cir. 2009) .............................................................................. 15

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*Hooven–Lewis v. Caldera*,
   249 F.3d 259 (4th Cir. 2001) ........................................................... 13

*Hughes v. Pair*,
   46 Cal.4th 1035, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009) ............... 26

*Jackson v. Wells Fargo Bank, N.A.*,
   693 F. App'x 634 (9th Cir. 2017) ..................................................... 13

*JKC Holding Co. v. Wash. Sports Ventures, Inc.*,
   264 F.3d 459 (4th Cir. 2001) ........................................................... 13

*Ladd v. County of San Mateo*,
   12 Cal.4th 913, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996) ................. 25

*Malone v. White Motor Corp.*,
   435 U.S. 497, 98 S. Ct. 1185, 55 L.Ed.2d 443 (1978) ....................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................ 13

*Molien v. Kaiser Foundation Hospitals*,
   27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980) .................... 26

*Montalvo v. Spirit Airlines*,
   508 F.3d 464 (9th Cir. 2007) ................................................ 14, 15, 20

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ........................................................................ 23

*Northwest Airlines, Inc. v. Minnesota*,
   322 U.S. 292 (1944) (J. Jackson, concurring) ........................ 14, 21, 22

*Rice v. Santa Fe Elevator Corp.*,
   331 U.S. 218 (1947) ........................................................................ 20

*S.E.C. v. Seaboard Corp.*,
   677 F.2d 1301 (9th Cir. 1982) ......................................................... 13

*San Diego Unified Port Dist. v. Gianturco*,
   651 F.2d 1306 (9th Cir. 1981) (*emphasis added*) ............................. 22

*Soule v. GM Corp.*,
   8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994) ................... 24

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

## TABLE OF CONTENTS

*United States v. Christensen*,
   419 F.2d 1401 (9th Cir. 1969)..................................................................14

*Witty v. Delta Air Lines, Inc.*,
   366 F.3d 380 (5th Cir. 2004)...........................................................15, 23

**Statutes**

49 U.S.C. § 41713(b)(1) ........................................................................23

49 U.S.C. § 44704(a) ............................................................................16

49 U.S.C. § 44704(d) ............................................................................16

Airline Deregulation Act of 1978 ..........................................................23

Federal Aviation Act..............................................................................14

**Other Authorities**

14 C.F.R. § 21.31 ..................................................................................16

14 C.F.R. §§ 43, 119, 121 and 135, *et seq*............................................16

14 C.F.R. § 121.153...............................................................................16

14 C.F.R. § 125.91 ................................................................................16

Department of Transportation (D.O.T.) Federal Aviation Administration,
   Interpretation 1975-29, 1975 WL 342731 (May 6, 1975). ...............18

Federal Rule of Civil Procedure 56(e)...................................................13

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The claim filed by plaintiff has morphed several times from what started out as a class action seeming to target primarily the defendant, Airbus S.A.S. ("Airbus"), to an individual claim that is now asserted only against the defendant Frontier. The core facts, however, have largely remained unchanged. Those facts are simply that an odor was detected on board an Airbus aircraft that was operated by Frontier while it was en route from Los Angeles to Orlando. When advised of same, the pilots decided to land the aircraft in Phoenix to determine whether the aircraft was in need of repair.

The passengers deplaned into the Phoenix Terminal and subsequently boarded another aircraft that took them to Orlando. Neither Plaintiff nor any other person on board that flight has provided Frontier with any medical record diagnosing them with any injury or illness caused by the alleged odor. Moreover, as Frontier advised plaintiff when she wrote to complain about this incident, the aircraft was inspected and no problems were noted.

Although plaintiff has not provided any expert report to establish either injury or aircraft defect, Plaintiff has nonetheless alleged that the "odor" that was detected was "toxic" and caused by what plaintiff claims to be a defective aircraft ventilation system. Indeed, the crux of plaintiff's complaint is that every aircraft which uses the "bleed air system" to supply cabin air is defective.

According to plaintiff's complaint, only the Boeing 787 "Dreamliner" is free from this alleged "defect." First Amended Complaint [Dkt No. 33], ¶ 70. Although plaintiff concedes that Frontier did not manufacture or design the aircraft, she nonetheless alleges that Frontier can be held liable for operating same. In essence, plaintiff argues that every air carrier should either dispose of all their current aircraft fleet and any Airbus aircraft and operate only 787s and/or "retrofit" all their other aircraft. First Amended Complaint [Dkt No. 33], ¶ 69.

The claims asserted by plaintiff are unsupported by law, fact, expert opinion

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

and common sense.  It is well established that federal law preempts the standards for aviation safety and that federal law designates the US Federal Aviation Administration ("FAA") as the entity charged with uniformly regulating same throughout the country.  FAA rules clearly establish that no person or carrier can operate an aircraft unless the FAA issues a type certificate that designates the aircraft as airworthy and safe for operation.

The declaration of James Nides attests that the aircraft which carried plaintiff on the flight in question was certified as airworthy and maintained in accordance with FAA requirements.  Plaintiff has provided no proof or expert opinion to the contrary. Indeed, although plaintiff acknowledges in her complaint that the FAA has studied this alleged "defect" for almost a quarter of a century, plaintiff does not and cannot set forth any statement by the FAA indicating that the bleed air system is defective and/or that aircraft using same should be discarded and/or retrofitted in some way. Moreover, EASA, the well-respected European aviation regulatory authority, has published a study indicating that it has found the cabin air quality of aircraft using the bleed air system to be safer than indoor air tested at schools and kindergartens.

Of course, as with any blunderbuss type of pleading, plaintiff also asserts the all too typical "failure to warn" and "negligent maintenance" claims along with a not so typical "false imprisonment" claim alleging that Frontier "imprisoned" all the passengers waiting near the gate to board the replacement aircraft and proceed to their destination.  However, after almost a year of litigation and a clear deadline issued by the court for service of expert reports, no evidence or expert report has ever been provided to support these claims.

By way of contrast, the declaration of Brittany Shamburger establishes that Frontier did not "imprison" all the passengers standing in the terminal near the gate and the declarations of Henry Villareal and James Nides establish that upon landing, the aircraft was inspected per FAA guidelines to determine if there was any maintenance issue and then monitored for a period of 30 days and found to not have

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

any issues either immediately after the alleged incident or for 30 days thereafter when the aircraft was put back in normal use.

Lastly, it is relevant to note that plaintiff has produced no expert medical report to establish that she received any injury whatsoever as a result of her alleged exposure to "toxic" cabin air. In light of same and all of the foregoing, there is no legal or factual basis for the action against Frontier to continue. Accordingly, the claims asserted against Frontier should be dismissed as a matter of law.

## STATEMENT OF FACTS

Plaintiff's complaint alleges that she purchased a one way ticket from Frontier for a flight from Los Angeles to Orlando. The cost of her ticket was $163.99. First Amended Complaint, [Dkt No. 33], ¶ 16. Plaintiff alleges that the aircraft for said flight was believed to be an Airbus A320. First Amended Complaint, [Dkt No. 33], ¶¶ 18. During the course of the flight, plaintiff alleges that an odor was detected that caused her and others on board the aircraft to feel ill. First Amended Complaint, [Dkt No. 33], ¶¶ 20-21.

Plaintiff initially filed a complaint as a representative of a proposed class action and sought recovery for damages allegedly caused by an alleged "bleed air event." First Amended Complaint, [Dkt No. 33], ¶ ¶ 16-88. In so doing, plaintiff alleged causes of action for strict liability, breach of warranties, negligence, negligent infliction of emotional distress and false imprisonment. Plaintiff's claims, however, are replete with conclusory and unsupported allegations.

In that regard, plaintiff alleges in paragraphs 7 and 8 of her complaint that the Airbus defendants "design, manufacture and sell" aircraft, while alleging in paragraph 9 that Frontier operates aircraft. First Amended Complaint [Dkt No. 33], ¶ ¶ 7, 8 and 9. Nonetheless, the causes of action for strict liability on the basis of design defect, breach of warranties and negligence are alleged against "All Defendants" on the basis that all defendants bore some responsibility for, among other allegations, "designing, manufacturing, assembling, testing, maintaining, servicing, selling, marketing,

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

promoting and providing warnings or instructions about the subject aircraft." First Amended Complaint [Dkt No. 33], ¶ 104; *see also* ¶¶ 89-110.

Plaintiff cannot reasonably dispute that these causes of action do not apply to Frontier. In that regard, Plaintiff's complaint clearly states that the alleged cause of her injuries was an aircraft manufactured by the former defendant, Airbus.

> 17. On or about June 2, 2017, Plaintiff boarded Frontier airlines flight number F91630 with a scheduled departure time of 10:19 PM and an arrival time of 6:04 AM on June 3, 2017. The flight was direct from Los Angeles to Phoenix with no scheduled stops.

> 18. Plaintiff believes the aircraft to have been an airbus A320 (320) V1. The aircraft was designed and manufactured by Airbus.

First Amended Complaint [Dkt No. 33], ¶¶ 17-18. Plaintiff's first amended complaint defines said aircraft as a "product" and specifically alleges that a "product defect" caused her to be injured.

> 22. Upon information and belief, while onboard the subject aircraft Plaintiff and the members of the classes (as defined below) were exposed to toxic fumes that entered the passenger cabin through the aircraft's ventilation system as a result of what is commonly referred to as a "fume" event.

> 23. The toxic fumes entered the passenger cabin through the air delivery system as a result of the product defect as alleged herein. The "product" for purposes of this Complaint is the Airbus aircraft and its component parts.

First Amended Complaint [Dkt No. 33], ¶¶ 22-23.

Nothing asserted in plaintiff's complaint alleges Frontier to be responsible for either the design or manufacture of the allegedly defective product. Instead, Frontier is (correctly) alleged only to have operated the aforesaid aircraft.

> 9. Frontier is a Delaware corporation with a principal place of business and corporate headquarters in Denver, Colorado. Frontier operates passenger service throughout the United States including between California and Florida.

> …

19. At the times mentioned, and at all times relevant to this complaint, Frontier is a common carrier engaged in the business of transporting passengers for hire by air.

First Amended Complaint [Dkt No. 33], ¶¶ 9 and 19.

Although plaintiff's complaint makes numerous allegations regarding an allegedly defective aircraft cabin ventilation system, it makes only selective reference to the legal regulatory regime by which aircraft design, certification, operation and maintenance issues are governed. In that regard, Plaintiff makes no reference to the legal requirements that mandate a domestic air carrier to operate only aircraft certified as airworthy by the FAA. Nor does she mention that Frontier was required by law to only operate aircraft that are so certified and to do so in accordance with FAA operational and maintenance guidelines. Instead, without citing any regulatory authority, Plaintiff alleges that there is purportedly a "better design" for aircraft cabin ventilation. First Amended Complaint [Dkt No. 33], ¶¶ 75-81.

Plaintiff's complaint does, however, correctly note that the FAA was directed to study the foregoing ventilation issue. First Amended Complaint [Dkt No. 33], ¶ 61. Indeed, plaintiff specifically alleges that the FAA has extensively studied the issues raised in the complaint since 1994. First Amended Complaint [Dkt No. 33], ¶¶ 59-61. Moreover, plaintiff's complaint acknowledges that the FAA extensively regulates aircraft ventilation by imposing design and performance obligations on a manufacturer as a condition to issuance of a type certificate. First Amended Complaint [Dkt No. 33], ¶¶ 95-98.

Although plaintiff does not allege that the FAA ever determined that the "bleed air system" is defective or unsuited for use on board any aircraft, even after extensive study, she nonetheless alleges that it is a product "defect" and consistent with standard product liability pleading, alleges that the aircraft and/or "product" was defective at the time it left the manufacturer and delivered to Frontier to operate. First Amended Complaint [Dkt No. 33], ¶¶ 89-92, 101-102.

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

-5-
FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Although Plaintiff also does not explicitly set forth the alleged negligence of the defendant Frontier, she generically claims that "defendants" failed to maintain, retrofit and warn about the alleged "dangers" of the bleed air system. First Amended Complaint [Dkt No. 33], ¶¶ 106-110. Additionally and again without providing any specifics, Plaintiff alleges that "defendants" negligently inflicted emotional distress on plaintiff and "falsely imprisoned" her and other passengers in the Phoenix Airport Terminal.  First Amended Complaint [Dkt No. 33], ¶¶ 111- 125.

The declarations accompanying this motion establish that Frontier did not design, manufacture, distribute or sell the aircraft and further establish that the aircraft was inspected upon landing and found free of any defect or problem with the aircraft ventilation system.  Uncontroverted Fact ("UF") Nos. 1, 2, and 8.  Said declarations also establish that the aircraft was also monitored for the next 30 days and no problems were noted during that time.  UF No. 9.  Additionally, said declarations also establish that Frontier gate agents did not "imprison" passengers waiting at the gate to board the aircraft that took them to their ticketed destination. UF Nos. 10-17.

Relevant to the foregoing, it should be noted that subsequent to the service of Plaintiff's complaint, the Court met with the parties and issued a scheduling order and schedule of dates.  [Dkt Nos. 30 and 32].  Those orders provided that expert reports were to be provided no later than eight weeks prior to the discovery cutoff date that was set at June 10, 2019.  The deadline for service of expert reports has therefore expired almost six weeks ago. Plaintiff, however, has not served any expert report. Plaintiff has, therefore, not substantiated that she has suffered an injury, that it was caused by the perceived odor, or that there was any negligence or fault on the part of Frontier.  Instead, plaintiff, without explanation and contrary to her numerous statements to the Court, has belatedly filed a stipulation less than ten days ago discontinuing her claim against the aircraft manufacturer, Airbus.  *See* Plaintiff's Notice of Dismissal [Dkt No. 54].

/ /

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

6036597

-6-

### RULE 56 STANDARD

When reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If a motion for summary judgment under Federal Rule of Civil Procedure 56 is properly made and sufficiently supported, an opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

A "material fact," for the purposes of the summary judgment inquiry, is a fact that might affect the outcome of a party's case. *Id.* at 248; *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982); *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014); *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Similarly, whether a fact is considered "material" is determined by the substantive law governing the claims alleged in the complaint. Accordingly, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Jackson v. Wells Fargo Bank, N.A.*, 693 F. App'x 634, 635 (9th Cir. 2017); *Bunn v. Khoury Enterprises, Inc, supra; Hooven–Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Additionally, Federal Rule of Civil Procedure 56(e) requires that the nonmoving party go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

/ /

/ /

/ /

/ /

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

# ARGUMENT

# I

## FRONTIER CANNOT BE HELD LIABLE FOR OPERATING AN AIRCRAFT THAT THE FAA HAS CERTIFIED AS AIRWORTHY OR FOR NOT WARNING ABOUT A CONDITION WHICH THE FAA HAS NOT DEEMED TO BE UNSAFE

For nearly a century, Congress has recognized that federal control over aviation must be "intensive and exclusive." *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (J. Jackson, concurring). To that end, Congress enacted the Federal Aviation Act (the "Act") in 1958, the "whole tenor [of which was] to create and enforce one unified system of flight rules." *United States v. Christensen*, 419 F.2d 1401, 1404 (9th Cir. 1969). Congress found the "creation of a single, uniform system of regulation vital to increasing air safety." *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 368 (3d Cir. 1999). The Act, together with the broad authority given to the FAA, thus establishes a "uniform and exclusive system of federal [aviation] regulation." *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 639 (1973).

### A. US Courts Have Consistently Held that Federal Law Governs Aviation Safety

Consistent with this understanding, the Ninth Circuit has held that the Act and its corresponding regulations "demonstrate an intent to occupy exclusively the entire field of aviation safety and carry out Congress' intent to preempt all state law in this field." *Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007). The holding of *Montalvo* is particularly relevant to the claims asserted in this litigation. The issue in that case was whether air carriers had a duty to warn passengers of the risks of deep vein thrombosis ("DVT"). *Montalvo*, 508 F.3d at 468. After analyzing the Act and the federal regulations, the Court found that, through implied field preemption, the Act "preempts the entire field of aviation safety from state and territorial regulation."

*Id.* at 468, 473-74.  Applying this principle, the Court concluded that the air carriers were under no duty to warn about the potential risks of DVT "absent a federal mandate to do so."  *Id.*  Because no such mandate existed, the Court upheld the dismissal of plaintiffs' failure to warn claims.  *Id.* at 474; *see also Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004).  Applying that holding to the facts of this case clearly mandate the same result as to plaintiff's failure to warn claim against Frontier.

Subsequent to *Montalvo*, the Ninth Circuit reaffirmed federal control over aviation in *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.,* 555 F.3d 806 (9th Cir. 2009) stating that when the FAA "issues 'pervasive regulations' in an area…the [agency] preempts all state law claims in *that* area."  555 F.3d 806, 811 (9th Cir. 2009) (*emphasis in original*).  In so holding, the Ninth Circuit rejected a claim that federal law exclusively governs the design of external airstairs because there was only one federal regulation regarding airstairs.  *Martin*, 555 F.3d at 812.  *Martin* therefore, held that airstairs were not "pervasively regulated" by the FAA.  *Id.*

In the case at bar, the claim against Frontier arises not on account of a passenger walking down external airstairs but rather, plaintiff alleges that her injury was caused by the operation of the aircraft itself and an allegedly defective bleed air system.  The Court need look no further than the allegations of plaintiff's complaint to hold that both the aircraft and the bleed air system are pervasively regulated by the FAA and the subject of at least 25 years of FAA study and evaluation.

Paragraph 94 of the First Amended Complaint [Dkt No. 33], states,

> **The Federal Aviation Administration (FAA) has issued a number of federal aviation regulations (FARs), airworthiness directives (ADs), and advisory circulars (ACs) regarding cabin air ventilation requirements**...

The next four paragraphs of the complaint go on to list four specific regulations and subparts that plaintiff alleges to specifically regulate various aspects of the cabin air ventilation system.  First Amended Complaint [Dkt No. 33], ¶¶ 95-98.  Additionally,

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

plaintiff's complaint correctly notes that the FAA was directed to study the foregoing ventilation issue, First Amended Complaint [Dkt No. 33], ¶ 61, and has extensively studied the issues raised in the complaint since 1994.  First Amended Complaint [Dkt No. 33], ¶ ¶ 59-61.

The accompanying Declaration of James Nides explains that the FAA requires that any aircraft that Frontier or any other air carrier operates must be certified by the FAA as being airworthy.  *See* 14 C.F.R. § 121.153; UF Nos. 4-5.  He also explains that aircraft manufacturers must obtain a type certificate from the FAA, which certifies that an aircraft performs properly and meets the safety standards defined in the FAA's regulations.  *See* 49 U.S.C. § 44704(a); 14 C.F.R. § 21.31; Nides Decl., ¶ 7.

In addition to the foregoing, Mr. Nides states that to operate a particular aircraft, air carriers must also be provided with an airworthiness certificate, which certifies that the aircraft conforms to its type certificate and is in condition for safe operation.  *See* 49 U.S.C. § 44704(d); 14 C.F.R. § 125.91; UF No. 5.  In that regard, Mr. Nides states that all of the aircraft operated by Frontier have been certified as airworthy by the FAA.  Nides Decl., ¶ 9; UF No. 6.  He similarly states that the FAA regulates the scope and content of air carrier maintenance programs, *see* 14 C.F.R. §§ 43, 119, 121 and 135, *et seq*., and that Frontier operates its maintenance program in accordance with FAA regulations.  Nides Decl., ¶ 10-11; UF No. 7.

The foregoing clearly establishes that the aircraft and allegedly defective "bleed air system" at issue in this litigation are pervasively regulated by the FAA and have been certified by the FAA to be safe and suitable for operation.  This finding is particularly significant when it is considered that Plaintiff's own complaint concedes that the FAA has been extensively studying these issues for almost 25 years.  Moreover, it is equally significant to note that there is absolutely no evidence or basis for claiming that Frontier either operated or maintained its aircraft in violation of FAA regulations.  Given the FAA's exclusive control over these pervasively regulated areas, there is no basis for finding Frontier liable for its operation, maintenance or

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  alleged "failure to warn."

2        The Seventh Circuit's holding in *Bieneman v. City of Chicago*, 864 F.2d 463,

3  471 (7th Cir. 1988) is particularly instructive.  In that case, the Court of Appeals

4  specifically addressed federal preemption in the context of considering whether the

5  district court properly dismissed an action similar to the one at bar.  Like here,

6  plaintiff claimed aircraft that were deemed airworthy by the FAA were defective

7  because they were not equipped with equipment that plaintiff claimed to be required.

8  In that regard, the Court of Appeals framed the issue and its resolution as follows:

9        Bieneman's complaint suggests that damages should be awarded because
   there are too many flights per hour, or *because the aircraft are older*
10   *models not fitted with high-bypass turbofan engines*, or because the
   planes do not climb at a sufficiently steep rate after takeoff. These
11   subjects are governed by federal law, ***and a state may not use common***
   ***law procedures to question federal decisions or extract money from***
12   ***those who abide by them***.
13
14  864 F.2d at 473 (*emphasis added*).

15        Consistent with the foregoing, the court in *Air Evac EMS, Inc. v. Robinson*, 486

16  F. Supp. 2d 713 (M.D. Tenn. 2007) held that the State of Tennessee was also

17  preempted from regulating the type of equipment used in air ambulance helicopters.

18  The district court cited to the preemption case law noted herein, enjoined the proposed

19  regulation of the State of Tennessee and held that "only the FAA" has "responsibility

20  for matters concerning aviation safety, *including the certification* and operation of

21  aircraft." 486 F. Supp. 2d at 715 (*emphasis added*).

22        **B.  The FAA Has Rejected State Attempts to Regulate Aviation Safety and the**

23            **FAA and EASA Have Deemed Bleed Air Systems to be Safe**

24        The FAA -- the Agency charged with the duty to promulgate the regulations

25  and standards governing flight operations and safety -- has also rejected State attempts

26  to require additional safety equipment on aircraft, specifically including safety

27  equipment that would purportedly provide protection from toxic fumes.   In

28  Interpretation 1975-29, Federal Aviation Decisions, I-48, the Chief Counsel of the

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

FAA responded to a letter inquiring whether a State had the right to promulgate a rule requiring installation of an additional safety feature on aircraft using that State's airspace.   *See* Department of Transportation (D.O.T.) Federal Aviation Administration, Interpretation 1975-29, 1975 WL 342731 (May 6, 1975).  The Chief Counsel to the FAA unequivocally rejected this proposal with language and reasoning which echoes the Supreme Court's holding in *Burbank*:

> The expansive authority of the Administrator to prescribe safety standards applicable to civil aircraft in air commerce under Title VI of the [Federal Aviation Act of 1958] is indicative of *Congress' intent to preempt any state or local regulation* on the same subject matter. This preemptive intent is all the more forceful when the *nature* of air commerce is considered and the *necessity for uniformity* of regulation is reflected upon.
>
> Pursuant to its broad statutory mandate, the FAA has issued a detailed and comprehensive scheme of rules and regulations requiring the installation of safety hardware under both its certification and operating rules. Your attention is particularly directed toward the certification and operating rules for air carriers found in Federal Aviation Regulation (FAR) Part 121 of Title 14. The breadth and scope of these regulations, *coupled with what we consider to be Congress' desire to make Federal superintendency of safety in air commerce an exclusive enterprise, requires a finding of Federal preemption with respect to any state or local regulation requiring installation of "Smoke Hoods" as described in your correspondence*.

Department of Transportation (D.O.T.) Federal Aviation Administration, Interpretation 1975-29, 1975 WL 342731, at *1 (May 6, 1975) (*emphasis added*).

Additionally, it is worth noting that, as plaintiff alleges in her complaint, Airbus is a "*European multinational corporation that designs, manufactures, and sells civil and military aeronautical products worldwide.*"  First Amended Complaint [Dkt No. 33], ¶ 7.  As such its products are subject to initial regulation by the European Aviation Safety Agency (EASA).  Similar to the FAA, EASA describes its mission as ensuring "*the highest common level of safety protection for [European Union] citizens*" and "*the highest common level of environmental protection.*"  It further states

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

that one of the ways that it achieves this mission is to "*certify & approve products and organisations, in fields where EASA has exclusive competence (e.g. airworthiness).*"[1]

In conjunction with its regulatory role, EASA has also specifically studied the "bleed air" issue[2] which plaintiff cites as the crux of all of her claims. In that regard, EASA has made the following findings in a 2014 report. First, EASA noted that "airborne contaminations [similar to those found in aircraft] are also observed in typically indoor environments like offices, schools, kindergartens or dwellings."[3] EASA also found that "[t]aking indoor air guidelines into consideration, the cabin air is no object of any concerns."[4] EASA then explicitly noted that:

> [t]o state the obvious, there is no contaminant-free indoor environment. The aircraft cabin is no exception. However, due to the exceptional high air exchange rates in aircraft, the cabin air has been proven to be less polluted compared to normal indoor environments (e.g., offices, dwellings, etc.). Volatile contaminations in the cabin are thus depleted quickly.[5]

In summarizing the "current data situation," EASA concluded that "[t]he still ongoing discussion about the so-called 'aerotoxic syndrome' remains completely incomprehensible."[6]

The foregoing statements are obviously contrary to what plaintiff alleges in her complaint. This is not surprising, since plaintiff's complaint claims that the FAA has been aware of allegations about "bleed air" for 25 years but has never deemed the bleed air system to render an aircraft not airworthy nor required any airline to warn

---

[1] *See* https://www.easa.europa.eu/the-agency/the-agency

[2] *See* EASA – Final Report on Preliminary Cabin Air Quality Measurement Campaign, available at https://www.easa.europa.eu/sites/default/files/dfu/EASA%20CAQ%20Study%20Final%20Report_21.03.2017.pdf

[3] *Id.* at p.105.

[4] *Id.* at p. 105-06.

[5] *Id.* at p. 106.

[6] *Id.* at p. 109.

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

1   about the bleed air system.  In light of EASA's findings, the foregoing case law and

2   the specific holding by the Ninth Circuit in *Montalvo* that air carriers are under no

3   duty to warn about the alleged potential health risks "absent a federal mandate to do

4   so," plaintiff's claims in the case at bar against Frontier should be dismissed just as the

5   claims against the air carrier defendants were dismissed in *Montalvo*.  508 F.3d at 473,

6   474.  Moreover, since plaintiff's false imprisonment claim is based only on conclusory

7   allegations and is patently devoid of any credibility, that claim should be dismissed as

8   well.

9                                    **II**

10  **IN ADDITION TO THE PERVASIVE REGULATION TEST FOR**
    **APPLYING FEDERAL STANDARDS, THE NINTH CIRCUIT HAS ALSO**
11  **APPLIED THE NATURE OF THE SUBJECT MATTER TEST TO HOLD**
    **THAT FEDERAL STANDARDS EXCLUSIVELY GOVERN LIABILITY,**
12  **WHILE THE AIRLINE DEREGULATION ACT OF 1978 HAS BEEN**
    **HELD TO PRECLUDE THE USE OF STATE LAW RELATED TO**
13  **AIRLINE ROUTES, SERVICES AND PRICE**

14           The ultimate conclusion to be reached from reading the cases and analysis in

15  Point I is simply that the defects alleged by plaintiff are all subjects of pervasive

16  federal regulation by the FAA and therefore require a breach of federal standards in

17  order to establish liability.  As explained therein, the Ninth Circuit has used this test in

18  recent aviation cases to determine whether federal regulations exclusively govern the

19  subject matter at issue.  There are, however, other tests for determining whether

20  federal law preempts.

21      ***A.  The Nature of the Subject Matter Precludes State Regulation***

22           From the inception of our nation to the present day, the Supreme Court has

23  frequently found itself struggling to resolve disputes as to whether federal or state

24  laws regulate a particular issue.  More than fifty years ago, it was stated that disputes

25  arising under the Supremacy Clause "start with the assumption that the historic police

26  powers of the States [are] not to be superseded by ... Federal Act unless that [is] the

27  clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S.

28  218, 230 (1947).  In conjunction with the foregoing, the Supreme Court has also stated

that "[t]he purpose of Congress is the ultimate touchstone" of preemption analysis. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S. Ct. 1185, 1189, 55 L.Ed.2d 443 (1978) (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S. Ct. 219, 222, 11 L.Ed.2d 179 (1963)).

There is, however, even earlier Supreme Court case law which recognizes that some subjects are so inherently federalized that their very "nature" require exclusively federal regulation.  *Gibbons v. Ogden*, 22 U.S. 1 (1824), addressed a dispute as to whether New York had the power to exclusively license steamboat operators using the Hudson River.  The Supreme Court invalidated New York's authority to do so based on its holding that the "**power of regulating commerce extends to the regulation of navigation**." 22 U.S. at 3 (*emphasis added*).  A few decades later, the Supreme Court similarly decided a dispute regarding whether federal or State law regulated the piloting of vessels in the Philadelphia harbor. *Cooley v. Board of Wardens*, 53 U.S. 299 (1851) echoed the holding of *Gibbons* and specifically held that federal power must extend to matters that "**are in their nature national, or admit only of one uniform system or plan of regulation**."  53 U.S. at 319 (*emphasis added*).

Since that time, the Supreme Court has repeatedly held that the "nature" of aviation requires uniform federal control and exclusive regulation.  In that regard, the Supreme Court cited to *Gibbons* in 1944 to hold,

> **Air as an element in which to navigate is even more inevitably federalized by the commerce clause than is navigable water**. Local exactions and barriers to free transit in the air would neutralize its indifference to space and its conquest of time. . .  Congress has recognized the national responsibility for regulating air commerce. **Federal control is *intensive* and *exclusive***.

*Nw. Airlines, Inc. v. Minnesota*, 322 U.S. 292, 302, 303 (1944) (Jackson, J., concurring) (*emphasis added*).

In 1948, the Supreme Court again noted both the unique nature of aviation commerce and the comprehensive regulatory scheme established by Congress to explain federal control over aviation:

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

Congress has set up a *comprehensive* scheme for regulation of common carriers by air. . . . We find no indication that the Congress either entertained or fostered the narrow concept that air-borne commerce is a mere outgrowth or overgrowth of surface-bound transport. . . . **[A]ir commerce, whether at home or abroad, soared into a different realm than any that had gone before**. Ancient doctrines of private ownership of the air as appurtenant to land titles had to be revised to make aviation practically serviceable to our society. **A way of travel which quickly escapes the bounds of local regulative competence called for a more penetrating,** *uniform* **and** *exclusive* **regulation by the nation than had been thought appropriate for the more easily controlled commerce of the past**.

*Chicago & S. Air Lines v. Waterman S. S. Corp.,* 333 U.S. 103, 105 (1948) (*emphasis added*).

Twenty five years later, the Supreme Court cited to its prior holdings in *Northwest* and *Cooley* to hold that the "nature" of aviation requires exclusive federal regulation.  *City of Burbank*, 411 U.S. 624, 625 and 633 (1973).  Indeed, Justice Rehnquist, who wrote a minority opinion on different grounds, agreed with the majority to state that implied **preemption of state law extended to "***all aspects* **of air safety**." 411 U.S. at 644 (*emphasis added*). That holding was then echoed by the Ninth Circuit eight years later when it specifically noted that *Burbank's* holding "did not rest solely on pervasive regulation . . . **the national character of the subject matter was said to be "the critical issue."** *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1312, fn. 11 (9th Cir. 1981) (*emphasis added*).

The foregoing holdings clearly demonstrate that even if the matters that form the core of Plaintiff's complaint were not the subject of pervasive regulation, the nature of aviation, and aviation safety in particular, clearly require that federal standards exclusively govern.  As has already been demonstrated, Plaintiff has not and cannot demonstrate any breach of these standards by Frontier. Thus, irrespective of whether pervasive regulation or the nature of the subject matter is used to determine the standards that govern the claims asserted against Frontier, the result would be the same, i.e. those claims must be dismissed as a matter of law.

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

### B. The Airline Deregulation Act Precludes State Regulation

Additionally, it is relevant to also note that insofar as Plaintiff's claim that Frontier should either dispose of all their Airbus and non-787 aircraft and/or retrofit their existing fleet with some entirely new ventilation system (that would certainly have to approved and certified by the FAA), that claim would also be preempted by the terms of the Airline Deregulation Act of 1978.

As the Fifth Circuit explained in *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 383 (5th Cir. 2004), when rejecting a far, far more modest claim that air carriers should be required to modify seat configurations, such a claim clearly "relates to prices charged by airlines" and is therefore preempted by the express preemption provision of the 1978 ADA. 366 F.3d at 383. In so holding, the Fifth Circuit cited to the Supreme Court's holding in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 385, 388 (1992) to explain that "such a requirement would impose a standard 'relating to a price' under § 41713(b)(1), and is accordingly preempted by the ADA." *Id.* It then went on to state that "Section 41713(b)(1) not only preempts the direct regulation of prices by states, but also preempts indirect regulation 'relating to' prices that have 'the forbidden significant effect' on such prices." *Id.*

Given the overwhelming weight of the multiple authorities cited in Points I and II, it is clear that federal law governs the crux of plaintiff's claims against Frontier. It is equally clear that Plaintiff has not and cannot present any legal, factual or expert proof to establish any breach by Frontier and therefore, Frontier is entitled to judgment as a matter of law. Moreover, as the following Point demonstrates, Plaintiff's claims are also subject to dismissal under State law.

/ /

/ /

/ /

/ /

/ /

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

### III

### EVEN IF PLAINTIFF'S CLAIMS WERE NOT EXCLUSIVELY GOVERNED BY FEDERAL LAW, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF CANNOT ESTABLISH ANY OF HER CAUSES OF ACTION AGAINST FRONTIER AS A MATTER OF LAW

Plaintiff alleges causes of action for strict liability, breach of warranties, negligence, negligent infliction of emotional distress and false imprisonment. However, plaintiff's claims are replete with conclusory and unsupported allegations and, as demonstrated further below, plaintiff cannot establish any of her causes of action against Frontier as a matter of law.

#### A. Plaintiff Cannot Establish a Strict Products Liability Cause of Action Against Frontier Because Frontier Does Not Manufacture, Distribute or Sell Aircraft

In order to prove her cause of action for "strict products liability – design defect" against Frontier, plaintiff must prove that Frontier manufactured, distributed, or sold a product with a defect in its manufacture or design. *See Soule v. GM Corp.*, 8 Cal.4th 548, 560, 34 Cal.Rptr.2d 607, 882 P.2d 298 (1994). Not only does Plaintiff not allege Frontier to have manufactured, distributed or sold the Airbus aircraft in question, the accompanying Declaration of James Nides, specifically confirms that Frontier does not manufacture, distribute or sell aircraft. UF No. 1. Thus there is no basis in law or fact to hold Frontier liable for the alleged design defects of a third party manufacturer whom plaintiff has inexplicably decided to belatedly dismiss from this action.

#### B. Plaintiff Cannot Establish a Breach of Warranties Cause of Action Against Frontier Because Frontier Does Not Manufacture, Distribute or Sell Aircraft

Because Frontier does not manufacture, distribute or sell Airbus aircraft, it cannot be found liable under theories of liability alleging either express or implied warranty. *See Fogo v. Cutter Laboratories, Inc.*, 68 Cal.App.3d 744, 759, 137 Cal.Rptr. 417 (1977) ("[A] sale is ordinarily an essential element of any warranty,

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

1  express or implied. . . ."); *see also*, UF No. 1.

2  ### C. Plaintiff Cannot Establish a Negligence Cause of Action Against Frontier

3  ### Because Frontier Maintains and Inspects its Aircraft in Accordance with FAA Regulations

4  The elements of a cause of action for negligence are well established and

5  include: (a) a legal duty to use due care; (b) a breach of the legal duty; and (c)

6  the breach proximately causing the resulting injury." *Ladd v. County of San Mateo,*

7  12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996).

8  Plaintiff's cause of action for negligence devotes a substantial amount of space

9  to reciting allegations against the manufacturer of the aircraft, Airbus, a defendant that

10  plaintiff recently dismissed after being granted the opportunity to serve Airbus via

11  certified mail.  First Amended Complaint [Dkt 33], p. 22, l. 98 – p. 23, l. 104.

12  Plaintiff does not allege, and cannot reasonably dispute, that Frontier did not design,

13  manufacture, assemble, sell, or distribute the aircraft.  UF Nos. 1 and 2.  Neither can

14  plaintiff dispute that Frontier did not represent, promote, or market the aircraft.  UF

15  No. 3.

16  With respect to the only allegation that could conceivably apply to Frontier,

17  plaintiff alleges that defendants "failed to adequately maintain, service, retrofit and/or

18  inspect the subject aircraft."  First Amended Complaint [Dkt 33], p. 23, ll. 22-23.

19  However, plaintiff will be unable to prove a negligence cause of action because

20  Frontier did not breach any duty to plaintiff and plaintiff did not sustain injury.

21  Frontier undertook to transport plaintiff from Los Angeles to Orlando.  When an odor

22  was detected in the aircraft during flight, the pilots diverted the aircraft to Phoenix,

23  where it was inspected by an FAA-certified technician in accordance with an FAA-

24  certified maintenance program.  UF Nos. 7 and 8.  Plaintiff was provided with hotel

25  accommodations and transportation to Orlando on an alternate aircraft, in addition to a

26  US$200 voucher (an amount in excess of the cost of plaintiff's one-way ticket).  UF

27  No. 18; Nides Decl. ¶ 16; Exhibit B to Nides Decl.

28  Plaintiff cannot dispute that Frontier maintains all of its aircraft in accordance

with FAA regulations or that the subject aircraft was inspected immediately following the incident and no defects were found.  UF Nos. 7 and 8.  Further, the subject aircraft was subsequently tracked for one month following the incident, and still no defects were found.  UF No. 9.  Perhaps most fatal to this cause of action, Plaintiff has not served any expert report to allege or establish that any different standards should apply, that Frontier breached such standards, and/or that the incident caused her any harm or injury.

### D. Plaintiff Cannot Establish a Negligent Infliction of Emotional Distress Cause of Action Against Frontier Because Frontier Was Not Negligent and Did Not Engage in Intentional or Reckless Conduct

Plaintiff alleges a cause of action for negligent infliction of emotional distress but makes allegations concerning "intentional and/or reckless" conduct in addition to negligence.  The doctrine of "negligent infliction of emotional distress" is not a separate tort or cause of action but, rather, allows certain persons to recover damages for emotional distress on a negligence cause of action, even though they were not otherwise injured or harmed. *See Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 928, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).  By contrast, a cause of action for intentional infliction of emotional distress requires a showing that the defendant engaged in "extreme and outrageous conduct" with the intent to cause emotional distress.  *Hughes v. Pair*, 46 Cal.4th 1035, 1050–1051, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009).

Whether plaintiff intended to assert a cause of action for negligent infliction of emotional distress or intentional infliction of emotional distress, plaintiff cannot establish her cause of action as a matter of law.  As provided above, Frontier operates and maintains its aircraft in accordance with federal regulations.   UF Nos. 4-7. Further, Frontier inspected the aircraft after the incident and monitored the aircraft for four weeks following the incident and found nothing wrong. UF Nos. 8 and 9. Given that Plaintiff has not provided an expert report indicating the foregoing standards do not apply and/or that Frontier breached applicable standards, there is no legal or

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

evidentiary basis for an assertion that Frontier engaged in "extreme or outrageous" conduct or was negligent with respect to its operation of the subject aircraft.

### E. Plaintiff Cannot Establish a False Imprisonment Cause of Action Against Frontier Because Plaintiff Was Not Restricted in Her Freedom of Movement and/or Plaintiff Consented to Remain in the Gate Area

The tort of false imprisonment consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 716, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994). Restraint of the plaintiff "may be effectuated by means of physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress." *Fermino*, 7 Cal.4th at 716.

The accompanying declaration of Brittany Shamburger establishes that in June, 2017, Menzies provided gate agents for Frontier at Phoenix Sky Harbor International Airport. UF No. 11. That declaration further states that agents advised passengers to remain near the gate area so that they could hear announcements relating to the status of their flight. UF Nos. 12 and 13; Declaration of Brittany Shamburger, ¶¶ 4-9. Moreover, and as anyone who has ever disembarked or embarked from a gate at any large (or small) US airport knows, Menzies agents (and all gate agents generally) do not attempt or intend to confine passengers waiting to board another flight. UF Nos. 14 and 15; Shamburger Decl., ¶¶ 4-9.

Insofar as this particular flight is concerned, (and all other flights), Menzies did not and would not use physical barriers, force, threats of force, menace, fraud, deceit or unreasonable duress in dealing with passengers. UF No. 16; Shamburger Decl., ¶¶ 4-9. Passengers are always free to leave the gate area but they are advised that, if they do so, they may miss an important announcement regarding the flight. UF Nos. 12-17; Shamburger Decl., ¶¶ 4-9. Plaintiff's vague and non-specific claim that she was falsely imprisoned is contrary to the specific evidence accompanying this motion, simple common sense, and the everyday experience of anyone who has travelled on a passenger aircraft in the United States. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

(2009) (holding that the federal pleading standard does not require that conclusory and unsupported allegations be assumed to be true).

## CONCLUSION

In light of the foregoing, Frontier Airlines, Inc. respectfully requests that the Court dismiss plaintiff's complaint in its entirety, with prejudice, and enter judgment in favor of Frontier Airlines, Inc.

Dated: May 20, 2019                    CLYDE & CO US LLP

By: _____

KEVIN R. SUTHERLAND
NATASHA N. MIKHA
Attorneys for Defendant
FRONTIER AIRLINES, INC.

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

6036597

-22-

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years, and not a party to the within action.  My business address is 633 West 5th Street, 26th Floor, Los Angeles, California 90071.

On May 20, 2019, I served the document(s) described as:

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

on the parties in this action addressed as follows:

SEE ATTACHED SERVICE LIST

in the following manner:

☐    **(BY FAX):** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below, or as stated on the attached service list, on this date before 5:00 p.m.

☐    **(BY MAIL):** as follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐    **(BY OVERNIGHT DELIVERY):** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

☐    **(BY PERSONAL SERVICE):** I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☒    **(BY CM/ECF):** by electronic filing system with the clerk of the Court which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have filed a Notice of Consent to Electronic Service in this action:

I declare I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **May 20, 2019**, at Los Angeles, California.

_____
Sonja L. Gray

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600

6036597

-23-

SERVICE LIST

Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
BRADLEY/GROMBACHER LLP
2815 Townsgate Road, Suite 130
Westlake Village, California 91361
Tel:  (805) 270-7100
Fax: (805) 270-7100
E-Mail: mbradley@bradleygrombacher.com
        kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff

Kristi D. Rothschild, Esq. (SBN 222727)
Julian Alwill, Esq. (SBN 259416)
ROTHSCHILD & ASSOCIATES, APC
27 W. Anapamu Street, Suite 289
Santa Barbara, California  93101
Tel:  (805) 845-1190
Fax: (805) 456-0132
E-Mail: krothschild@kdrlawgroup.com
        jalwill@kdrlawgroup.com

Attorneys for Plaintiff

FRONTIER AIRLINES INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

CLYDE & CO US LLP
355 S. Grand Avenue, 14th Floor
Los Angeles, California 90071
Telephone: (213) 358-7600